# United States Court of Appeals for the Federal Circuit

04-5008

BANNUM, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Kevin M. Cox, Law Firm of Joseph A. Camardo, Jr., of Auburn, New York, for appellant.

Lisa B. Donis, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief was Tracey L. Printer, Office of General Counsel, Federal Bureau of Prisons, United States Department of Justice, of Washington, DC. Of counsel was Maureen A. Delaney, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: United States Court of Federal Claims

Senior Judge Eric Bruggink

# United States Court of Appeals for the Federal Circuit

04-5008

BANNUM, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  April 21, 2005

_____

Before MICHEL, <u>Chief Judge</u>,[*] NEWMAN, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

Bannum, Inc. appeals from the judgment of the United States Court of Federal Claims in favor of the United States, dismissing its post-award bid protest with prejudice.  <u>Bannum, Inc. v. United States</u>, No. 03-1284 (Fed. Cl. Aug. 7, 2003) (final judgment incorporating bench ruling made during oral argument on August 6, 2003).  Although it determined the government violated its regulation and the terms of a request for proposals in evaluating the bids at issue, the trial court ruled there was no significant prejudice to Bannum.  We affirm.

_____

[*] Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

I.

On February 24, 2002, the Department of Justice, Bureau of Prisons ("BOP") issued a request for proposals ("RFP") for a contract relating to Community Correction Center ("CCC") services in the Florence, South Carolina area. On April 24, 2002, Bannum, Inc. ("Bannum") bid on the contract. The Alston Wilkes Society ("Alston Wilkes") submitted its bid the next day. As the "incumbent" contractor, from 1998 to 2003 Bannum rendered the same services at issue in the RFP.

The RFP provided that the bid selection would turn on "best-value" procurement. Under this system the BOP evaluated bids under five factors, each assigned a different point value: (1) past performance (400 points); (2) community relations (350 points); (3) technical (250 points); (4) management (250 points); and (5) cost (250 points). Past performance on other government contracts was the most important criteria.

The BOP valued past performance by reviewing Contract Evaluation Forms ("CEFs") completed for other BOP contracts. The CEFs are "annual assessments" that grade contractors with "overall performance" scores. The BOP's CEF process is governed by 48 C.F.R. § 42.1503 (Federal Acquisition Regulation or "FAR" § 42.1503). Section 42.1503 provides, in relevant part:

> Agency evaluations of contractor performance prepared under this subpart shall be provided to the contractor as soon as practicable after completion of the evaluation. Contractors shall be given a minimum of 30 days to submit comments, rebutting statements, or additional information. Agencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation. The ultimate conclusion on the performance evaluation is a decision of the contracting agency. Copies of the evaluation, contractor response, and review comments, if any, shall be retained as part of the evaluation. These evaluations may be used to support future award decisions, and should therefore be marked "Source Selection Information."

04-5008

FAR § 42.1503(b) (2004) (emphases added).

BOP procedures called for Management Center Administrators ("MCA"), under FAR § 42.1503, to review CEFs and contractor rebuttals. MCAs supervise "Correctional Management Centers" comprising two or more "community correction field offices." The MCA works "a level above CCC Oversight Specialists." It is undisputed that MCAs do not supervise BOP contracting officers.

The RFP required bidders to submit a list of all contracts completed in the preceding three years, or currently in progress. The RFP further cautioned "offerors would be well served to be aware of possible dissatisfied customers and address the issues in initial proposal submissions."

Bannum admits that it knew, when it submitted its bid on April 24, 2002, that the BOP had <u>not</u> reviewed the CEFs and Bannum's rebuttals relating to other contracts "at a level above the contracting officer." That is, Bannum knew that the BOP procedure called for reviewing CEFs at the MCA level. Nevertheless, Bannum identified 21 past contracts in its bid without mentioning <u>any</u> of its rebuttal letters or disagreement with existing CEFs. Bannum explains that it assumed the CEF and rebuttal review would take place in conjunction with the source selection on the RFP.

On October 9, 2002, the BOP scored Bannum's past performance based on 16 of Bannum's past contracts.[1] The BOP determined Bannum's past performance warranted 74% of the possible 400 points, assigning 296 points for this portion of Bannum's bid. The BOP did not alter its CEF review process as Bannum had assumed it would.

---

[1] The BOP only considered CEFs for which any appeal was complete.

04-5008

On January 13, 2003, BOP awarded the contract to Alston Wilkes. BOP notified Bannum of the award on January 23, 2003.

In March 2003, in response to alternative dispute resolution in the Government Accountability Office ("GAO") – not involving this specific action – the BOP re-evaluated its recent Community Correction Center award decisions. For this bid a contracting officer re-scored Bannum's past performance on the basis of 15 contracts and awarded Bannum 312 points rather than the original 296. Nonetheless, Alston Wilkes still received higher points than Bannum in each factor.

This was not a de novo review and the record does not show that this contracting officer accounted for every Bannum rebuttal. Instead, the March 2003 review relied on rebuttals available in the record maintained by BOP. On one past contract, J200c-361, the officer simply discarded the CEF because the CEF form was not signed. There is no evidence how the review on that contract, accounting for Bannum rebuttals, might have improved Bannum's past performance score for this bid. For contract J200c-433 – in contrast to instances where the contracting officer specifically noted that Bannum did not submit a rebuttal – the contracting officer simply noted there was no rebuttal in the file. On another contract, J200c-310, this officer simply reported the MCA's score after reviewing Bannum's rebuttal. The officer made no attempt to independently review the CEF in view of the rebuttal.

On May 28, 2003, Bannum filed this bid protest in the United States Court of Federal Claims, asking the court to set aside the contract award to Alston Wilkes and compel the BOP to re-evaluate Bannum's bid.

04-5008

- 4 -

Bannum and the government filed cross-motions for judgment on the administrative record. On August 6, 2003, the trial court heard argument and granted judgment for the government. Although the court ruled the BOP had violated both FAR § 42.1503(b) and the terms of the RFP when assigning weights (based on the CEFs) to Bannum's past contract performance, it determined that Bannum was not sufficiently prejudiced by the violations to warrant setting aside the award to Alston Wilkes.

On August 7, 2003, the trial court entered judgment for the United States and dismissed the action. Bannum timely appealed, and this court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.

## A.

A bid protest proceeds in two steps. First, as discussed below, the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second, as discussed further in Section III, if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

This court reviews the trial court's determination on the legal issue of the government's conduct, in a grant of judgment upon the administrative record, without deference. Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1318-19 (Fed. Cir. 2003); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). That is, this court reapplies the "arbitrary and capricious" standard of § 706 to the BOP's procurement decision. See 28 U.S.C. § 1491(b)(4)

04-5008

(2000); <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (holding that 28 U.S.C. § 1491(b), by its plain terms and according to its legislative history, "'applies the Administrative Procedure Act standard of review previously applied by the district courts (5 U.S.C. § 706)'") (quoting H.R. Conf. Rep. No. 104-841, at 10 (1996)). Consequently, the inquiry is whether the BOP's procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000).

B.

As noted above the lower court ruled that the BOP's failure to comply with FAR § 42.1503(b), and the terms of the RFP, were violations of law under § 706(2)(A). Although the government argues the court was mistaken, we find no error in these rulings.

The trial court focused on the BOP's process by which the MCA, rather than someone "at a level above the contracting officer," reviewed CEFs and contractor rebuttals. The government, however, urges the court to adopt the reasoning expressed by another Court of Federal Claims decision, in a related case, holding that the same CEF review process applied by the BOP 'substantially' complies with FAR § 42.1503. <u>See</u> <u>Bannum, Inc. v. United States</u>, 60 Fed. Cl. 718, 729 (2004) ("Review by MCAs satisfies the requirement that '[a]gencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation,' because it provides for third party review. <u>See</u> FAR § 42.1503(b). The provision does not require that a supervisory contract officer perform the review. <u>See</u> <u>id.</u>"). We find this reasoning unpersuasive.

04-5008

The FAR specifically required the BOP to "provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation." FAR § 42.1503(b). By its plain terms, a review "at a level above the contracting officer" contemplates review by a person with authority to direct the contracting officer's response. See, e.g., Webster's Ninth New Collegiate Dictionary 45 (1985) (defining "above" as "superior to (as in rank, quality or degree)"). The fact that FAR § 42.1503(b) uses "above" instead of "independent" tends to support the view that "above" means someone with authority over the contracting officer.

The regulation explains that the review is provided "to consider disagreements between the parties regarding the evaluation." FAR § 42.1503(b). Since "[t]he ultimate conclusion on the performance evaluation is a decision of the contracting agency," the review plainly is intended to account for any bias or mistake in the contracting officer's review. Id. But since the agency's ultimate decision on any dispute necessarily involves evaluating the contracting officer's review of the contract, the reviewing authority should be someone familiar with the contract, the history of its implementation, and the particular concerns of both the contracting officer and the contractor in performing the contract. Someone in a supervisory or decision-making role in relation to the contracting officer complies with this regulatory requirement.

This understanding comports with guidance from the Office of Federal Procurement Policy ("OFPP") concerning the contractor's right to have performance evaluations reviewed. In language that mirrors FAR § 42.1503(b), a 1992 Policy Letter explains that if evaluation is done by a contracting officer, contractors have a right to discuss such evaluation "with the head of the contracting activity." OFFP Policy Letter

04-5008

92-5 § 7(a)(3) (OFFP Dec. 30, 1992) (notification to contractors).[2]  This policy comports with a construction of FAR § 42.1503(b) that requires someone in a supervisory or decision-making capacity, in relation to the contract and contracting officer at issue, to review disputes regarding performance ratings.  In other words, the regulation specifies a supervisory role at least inasmuch as the reviewer has authority to settle disputes between the contracting officer and the contractor.

Other agencies implementing 48 C.F.R. § 42.1503(b) recognize that review under the regulation calls for similar contracting expertise.  For example, the EPA's policy statement regarding performance evaluations specifically recognizes that "[a] contractor's performance evaluation should closely parallel award fee determinations made under the contract."  48 C.F.R. § 1509.170-5(i).  This tends to confirm that "at a level above the contracting officer" indicates a person familiar with parallel award fee determinations, and how performance reviews affect that aspect of the contract.

The commentators agree that the reviewer is required to bring specific knowledge to the task.  For example, discussing the agency performance review system for "cost-plus-award-fee" (CPAF) contracts, the commentators discuss performance assessment in terms of a "review of those evaluations by a board of higher-level personnel."  J. Cibinic and R.C. Nash, Jr., <u>Formation of Government Contracts</u> 1166 (George Washington University 3d ed. 1998).  Cibinic and Nash explain:

> On larger procurement contracts . . . this step is advisable in order to ensure that the evaluations are internally consistent and that they reflect an overall view of the contractor's accomplishments.  A board of this type

---

[2]  <u>Available at</u> http://www.arnet.gov/Library/OFPP/PolicyLetters/Letters/PL92-5.html.  The court takes judicial notice of this Policy Letter under Fed. R. Evid. 201(c).

04-5008

would be expected to discern, for instance, not only that one evaluator has downgraded a contractor, but also that the contractor's performance was marginal because of a conscious decision to devote effort to some other important task.

Id. at 1166-67. To the extent this review implicates the same concern as review under FAR § 42.1503(b), it favors a construction that requires review by someone with authority over contract administration in general.

The government also sees performance evaluation under 48 C.F.R. § 42.1503(b) as a tool for improving current performance on existing contracts, suggesting the evaluation must be done in view of the detailed factual context surrounding contract administration. Again, this comports with review by someone supervising a contracting officer. For example, on May 22, 2003, DOD, GSA, and NASA – through the Civilian Agency Acquisition Council and Defense Acquisition Regulations Council – adopted a final rule requiring evaluation of Federal Prison Industries contract performance. Responding to a comment that the evaluation was irrelevant in view of a mandatory source status, the government replied by citing the May 2000 OFPP guide "Best Practices for Collecting and Using Current and Past Performance Information." "[T]he active dialog that results from assessing a contractor's current performance results in better performance on the instant contract, and [ ] such assessments are a basic best practice for good contract administration." 68 Fed. Reg. 28095 (May 22, 2003). The FAR review, therefore, should be undertaken by someone with not only an understanding of the contracting requirements, but also the authority to direct the contracting officer.

For all these reasons the lower court's reasoning in the related case, which the government urges this court to adopt, is unpersuasive. Review by the MCA does not

04-5008

satisfy FAR § 42.1503(b) simply because the MCA is a "third party." The trial court in this action correctly applied the proper analysis to the BOP's use of these CEFs.

Bannum further argues that the BOP violated the FAR in failing to assess Bannum's rebuttals, on the prior contracts, when assessing its bid. The trial court rejected this argument, and we likewise find it unconvincing. As the Comptroller General decided in 2001, a bid protest is not the proper forum, under FAR § 42.1503(b), to litigate CEF disputes. See In re Ocean Technical Servs., Inc., No. B-288,659, 2001 CPD P 193, 2001 WL 1505946, *3 (Comp. Gen. Nov. 27, 2001) ("Our bid protest forum is not the place for a firm to first complain of not having received an assessment, nor do we serve as a forum for a firm to dispute the substance of an agency's assessment of the firm's work.").

III.

The trial court was required to determine whether these errors in the procurement process significantly prejudiced Bannum. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). Prejudice is a question of fact. Advanced Data Concepts, 216 F.3d at 1057. To establish "significant prejudice" Bannum must show that there was a "substantial chance" it would have received the contract award but for the errors in using its CEF scores on prior contracts. Info. Tech., 316 F.3d at 1319; Alfa Laval, 175 F.3d at 1367.

A.

1.

Court of Federal Claims Rule 56.1 ("RCFC 56.1" or "Rule 56.1") sets forth the standard by which the court reviews factual determinations in a judgment on the administrative record. The issue before this court is whether the trial court correctly found that Bannum suffered no actionable prejudice by the BOP's FAR and RFP violations. We hold RCFC 56.1 requires the Court of Federal Claims, when making a prejudice analysis in the first instance, to make factual findings from the record evidence as if it were conducting a trial on the record. In such circumstances this court reviews such findings for clear error, consistent with RCFC 52 and appellate review of factual determinations underpinning a discretionary ruling on preliminary injunction.

This clear error review is consistent with the APA review dictated by § 1491(b)(4). As the court noted in Advanced Data Concepts, 216 F.3d at 1058, the substantial evidence standard incorporated into 28 U.S.C. § 1491(b)(4) applies to the Court of Federal Claims's review of agency findings, not the trial court's initial fact-finding. In this case the trial court was the first tribunal to assess prejudice to Bannum. Nor should the review of a Court of Federal Claims prejudice determination be premised on an "arbitrary and capricious" review. That review standard goes to the agency's compliance with the law, whereas the prejudice determination assesses whether an adjudged violation of law warrants setting aside a contract award.[3]

---

[3] Cf. F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1031 (Fed. Cir. 2000) (reviewing for clear error factual determinations, by the Court of International Trade, in a challenge to agency anti-dumping determinations, on a USCIT 56.2 motion for judgment on an agency record).

04-5008

- 11 -

2.

This court has not squarely considered the standard to review factual findings by the Court of Federal Claims under RCFC 56.1.  In <u>Banknote Corp. of Am., Inc. v. United States</u>, 365 F.3d 1345, 1352-53 (Fed. Cir. 2004) ("<u>Banknote II</u>"), the court decided a bid protest under RCFC 56.1 involving contractual interpretation.  The court ruled, as a matter of law, that the agency's conduct complied with 5 U.S.C. § 706(2)(A).  As the court specifically noted, "Indeed, the central issue raised in the bid protest case before us relates to the correct interpretation of the solicitation issued by the USPS, which is a question of law."  <u>Id.</u> at 1352 (citing <u>Grumman Data Sys. Corp. v. Dalton</u>, 88 F.3d 990, 997 (Fed. Cir. 1996)).

Although it never reached the factual question of prejudice, the <u>Banknote II</u> court added that it is the trial and appellate courts' task to "determine whether there are any genuine issues of material fact as to whether the agency decision lacked a rational basis or involved a prejudicial violation of applicable statutes or regulations."  This language equates a RCFC 56.1 judgment to a summary judgment under RCFC 56 and is unnecessary to the <u>Banknote II</u> holding.  Because the court decided the issue by an interpretation of the solicitation, e.g., making a legal determination, the court in <u>Banknote II</u> did not need to consider whether the trial court overlooked a genuine dispute or improperly considered the facts of that case.[4]

---

[4]     Although various cases since <u>Banknote</u> have repeated its <u>dicta</u> equating judgment under RCFC 56.1 with summary judgment, none of those cases have applied that reasoning.  As in <u>Banknote</u>, in each instance the decisions turned on pure questions of law.  <u>See, e.g.</u>, <u>Roth v. United States</u>, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (deciding only "whether the [trial] court erred as a matter of law in the several rulings that the government challenges on appeal"); <u>NVT Techs., Inc. v. United States</u>, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (reviewing the trial court decision "as a matter of

04-5008

In resting its judgment on the bidder's failure to show conduct violating the APA requirements at 5 U.S.C. § 706(2)(A), this court's decision in Banknote II mirrored the trial court's analysis. See Banknote Corp. of Am., Inc. v. United States, 56 Fed. Cl. 377, 381-86 (2003) (discussing and rejecting each contention of conduct violating the APA requirements) ("Banknote I"). In dealing with the factual allegation of prejudice, moreover, the trial court plainly followed a different standard from that required under Rule 56 summary judgment. For example, the plaintiffs advanced a theory that they were prejudiced because the Post Office "conducted inadequate discussions regarding their prices." Id. at 384-85. In particular, the plaintiffs challenged the government's failure to discuss prices on one group of products in the solicitation, arguing that had those products been discussed the plaintiffs would have reduced their bid prices on them. Id. at 385-86. Rather than consider an inference favoring the plaintiffs's prejudice claim on this point, the trial court flatly rejected it. As the Court of Federal Claims noted, the plaintiffs nowhere "provided any real proof" of their factual claim. Id. at 386. Likewise, rejecting an argument that the Postal Service improperly relied on an undisclosed evaluation factor of "prime contractor experience" in the guise of soliciting prices on tiered products, the lower court flatly rejected the plaintiffs's claim of prejudice as unsupported by the record. Id. at 387-88. In both instances, under a summary judgment standard, the Court of Federal Claims would simply have drawn the inference

law"); Wagner v. United States, 365 F.3d 1358, 1365 (Fed. Cir. 2004) (holding as a matter of law that the agency improperly applied a harmless error analysis to proceedings involving involuntary discharge from the military); Galen Medical Associates, Inc. v. United States, 360 F.3d 1324, 1340 (Fed. Cir. 2004) (rejecting contention that government conduct violated APA standards, without reaching question of prejudice); cf. Defenders of Wildlife, Earth Island Institute v. Hogarth, 330 F.3d 1358, 1374 (Fed. Cir. 2003) (affirming judgment on agency record, from the Court of International Trade, on purely legal questions of statutory and regulatory interpretation).

in favor of the plaintiffs. Instead the trial court, as it must under Rule 56.1, weighed the evidence and found no prejudice.

The trial court's analysis in <u>Banknote I</u> comports with a proper reading of Rule 56.1. The court must distinguish the trial court's judgment on the administrative record from a summary judgment requiring the absence of a genuine issue of material fact. The Court of Federal Claims adopted Rule 56.1 under its statutory authority to prescribe the procedural and practice rules for its proceedings.[5] <u>See</u> 28 U.S.C. § 2503(b). When interpreting Rule 56.1 there are several reasons to differentiate between a summary judgment and a judgment on the administrative record. First, as the Rules Committee Note observes, RCFC 56.1 has no counterpart in the Federal Rules of Civil Procedure.[6] We find this difference significant, and it counsels against adopting – simply by analogy – Rule 56 burden-shifting and presumptions. Rule 56.1 requires a different standard of review, otherwise there would be no need to differentiate between a Rule 56.1 procedure and a Rule 56 summary judgment analysis.

Second, by its plain language Rule 56.1 confirms this understanding. It specifically provides that "RCFC 56(a)-(b) applies, with the exception that any supplementation of the administrative record shall be by stipulation or by court order." RCFC 56.1(a). Subsections 56(a) and (b) of Rule 56 provide that one side or the other

---

[5]     The court has been unable to locate any history or commentary to Rule 56.1 other than the Rule Committee Notes accompanying the annotated Rules.

[6]     For this reason the Court of Federal Claims's intent to conform its Rules to the case law and Advisory Committee notes accompanying the federal civil rules is unhelpful here. <u>See</u> Court of Federal Claims Rules, Foreward, Rules Committee Notes to 2002 Revision. But RCFC 56.1 is not without precedent. Although the Court of Federal Claims did not identify them as persuasive, RCFC 56.1 does have counterparts in the Rules governing practice in the United States Court of International Trade. <u>See</u> USCIT 56.1, 56.2 (providing for judgment upon an agency record).

04-5008

can submit affidavits in support of their position. See RCFC 56(a), (b). Notably, RCFC 56.1 does not incorporate RCFC 56(c) or (d), yet those subsections provide the basis for denying summary judgment based on a genuine issue of material fact, and for drawing inferences in favor of the non-moving party. Accord Fed. R. Civ. P. 56(c), (d). This omission is consistent with a rule designed to provide for trial on a paper record, allowing fact-finding by the trial court.

Third, viewed in the context of this action the judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record. The statute conferring the Court of Federal Claims's jurisdiction over bid protests expressly requires the trial court to give "due regard" to "the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3). Proceeding under RCFC 56.1 merely restricts the evidence to the agency record, as may be supplemented consistent with RCFC 56(a) or (b). In this case, that required the trial court to make factual findings on prejudice from the record evidence.

Finally, the underlying cases cited in Banknote II do not support the proposition that in reviewing the factual matters in a judgment under Rule 56.1 this court "reappl[ies] the summary judgment standard in an independent review to determine whether the moving party is entitled to judgment as a matter of law." For this conclusion, Banknote II relies on JWK Int'l Corp. v. United States, 279 F.3d 985 (Fed. Cir. 2002) ("JWK II"). Banknote II, 365 F.3d at 1353.

In JWK II, this court explained – in the opening paragraph – that it affirmed the trial court's judgment for the government in view of the conclusion that the government acted in accordance with the law. JWK II, 279 F.3d at 986; see also id. at 988

(discussing contracting officer's decision not to enter into cost discussions with JWK). That holding mirrored the Court of Federal Claims's analysis below, in which the trial court granted judgment for the government on legal grounds. The trial court ruled that the government had not acted contrary to law under the APA standard at 5 U.S.C. § 706(2)(A). See JWK Int'l Corp. v. United States, 49 Fed. Cl. 371, 374 (2002); id. at 388-97 (finding none of the accused government conduct in evaluating JWK's bid failed the APA standard) ("JWK I").[7]

The trial court's JWK opinion explains, in detail, why each of the protestor's APA challenges failed to show fault in the government's conduct. That detailed discussion contrasts with the lack of analysis of why the factual record, for the same conduct, failed to support a claim of prejudice. Instead, at various points the lower court simply tacked onto various conclusions, that there was no APA violation, boilerplate determinations that prejudice was not shown. See, e.g., JWK I, 49 Fed. Cl. at 391 ("Moreover, based upon the review of the administrative record there is no evidence that JWK was in any way prejudiced by the agency's review of the past performance factors."); id. at 392 ("Moreover, based upon the record the Court can find no indication that JWK was prejudiced."); id. at 395 ("The Court finds no indication in the administrative record that JWK was prejudiced in any way by this determination."); id. at 396 (same). The fact that these conclusions lack any explanatory discussion of the record, despite lengthy discussion of how the accused conduct comports with the APA requirements, confirms

---

[7] Although the Court of Federal Claims's opinion in JWK I also erroneously stated that a typical Rule 56 summary judgment standard of review applied to judgment under RCFC 56.1, like this court's JWK II opinion none of the trial court's analysis turns on identifying the presence of a genuine issue of disputed fact. See JWK I, 49 Fed. Cl. at 387.

04-5008

that the lower court did not premise its judgment for the government on the absence of a genuine issue of disputed fact regarding prejudice. Instead, as noted, the case turns on the conclusion that no conduct violated the APA.

This court's opinion in JWK II likewise provided a cursory discussion of a failed showing of prejudice, but that discussion was unnecessary to the result. Moreover, although the JWK II opinion recites a summary judgment-type review of the facts, JWK II, 279 F.3d at 987, when considering prejudice this court did not draw all reasonable inferences in favor of the non-moving party. To the contrary, the court reviewed the evidence of prejudice on the merits:

> In the absence of an alleged error, there must be a "substantial chance" that JWK would have received the award. Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996). JWK argues that if the contracting officer had entered into cost discussions and it had been given the opportunity to offer cost caps on its proposed labor rate escalation, then it could have bid a lower cost and been awarded the contract. But cost was the least important criterion, and even with the cost realism adjustment, JWK's bid was still lower than LTM's. It was more important that JWK received lower ratings in the technical and management areas than LTM, because the contracting officer decided that LTM's superiority in those areas outweighed the marginal cost difference between the two. That was a permissible judgment under the source selection regulation, FAR § 15.308, 48 C.F.R. § 15.308 (2001).

JWK II, 279 F.3d at 988-89 (emphases added). If the court were applying a summary judgment review and determining whether a genuine issue of disputed fact existed, then on the facts set forth in the quoted language it would have had to infer prejudice, hold the protestor survived summary judgment, vacate the trial court judgment and remand for trial on the merits. In short, this court's review of the factual record for prejudice in JWK II was unnecessary to its result, and in any event applied a different standard that did not draw inferences in favor of the non-moving party.

04-5008

- 17 -

The Court of Federal Claims, therefore, when making a prejudice analysis in the first instance, is required to make factual findings under RCFC 56.1 from the record evidence as if it were conducting a trial on the record. In such circumstances this court reviews such findings for clear error, consistent with RCFC 52. As the court noted in Advanced Data Concepts, 216 F.3d at 1058, the substantial evidence standard incorporated into 28 U.S.C. § 1491(b)(4) applies to the trial court's review of agency findings, not the Court of Federal Claims's initial fact-finding. Nor do we find our review of a Court of Federal Claims prejudice determination amenable to an "arbitrary and capricious" review. That standard goes to the agency's compliance with the law, whereas the prejudice determination assesses whether an adjudged violation of law warrants setting aside a contract award. In sum, the trial court's factual determination on prejudice, in this judgment under RCFC 56.1, is entitled to review for clear error like any finding in a bench trial, and the special concerns applicable to bid protest actions do not alter that review here.

B.

The trial court did not clearly err in finding that Bannum was not significantly prejudiced by the BOP's violations. To establish prejudice Bannum was required to show that there was a "substantial chance" it would have received the contract award but for the BOP's errors in the bid process. Info. Tech., 316 F.3d at 1319; Alfa Laval, 175 F.3d at 1367; Statistica, 102 F.3d at 1582. This test is more lenient than showing actual causation, that is, showing that but for the errors Bannum would have won the contract. Alfa Laval, 175 F.3d at 1367; Data Gen., 78 F.3d at 1562.

04-5008

- 18 -

Bannum necessarily relies on the difference between the 104 points the BOP docked it based on the CEFs, and the 74.5 points by which Alston Wilkes won the bid. Had the BOP deducted fewer than 29.5 points for past performance, Bannum would have prevailed. But neither Bannum nor the record explains why Bannum had a substantial chance of scoring at least 74.5 points higher on past performance had the BOP reviewed the CEFs in accordance with the FAR. The independent review pursuant to the separate GAO proceeding increased Bannum's past performance award by 16 to 312 points, an amount insufficient to alter the award outcome. There is nothing besides Bannum's conjecture to support the contention that another review, comporting with the FAR, would provide it a substantial chance of prevailing in the bid. Bannum's argument rests on mere numerical possibility, not evidence. In sum, we find no clear error in the trial court's determination and will not disturb it. Accordingly, the judgment of the Court of Federal Claims is affirmed.

<u>AFFIRMED</u>

COSTS

Each side will bear its own costs.