ORCA NORTHWEST REAL ESTATE
SERVICES, Plaintiff,

v.

UNITED STATES of America, Defendant,

and

Harrington, Moran, Barksdale,
Inc., Intervenor.

No. 05–228C.

United States Court of Federal Claims.

May 2, 2005.

William T. Welch, Washington, D.C., with
whom was Jeffrey P. Hildebrant, for plaintiff.

Reid Prouty, Trial Attorney, Commercial
Litigation Branch, Civil Division, United
States Department of Justice, Washington,
D.C., with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen,
Director, and Robert E. Kirschman, Assistant Director, for defendant.

Alexander J. Brittin, McLean, Virginia, for
intervenor. Jonathan D. Shaffer, Washington, D.C., of counsel.

### ORDER ON RECONSIDERATION

BRUGGINK, Judge.

The court issued an opinion on April 18,
2005, denying plaintiff's request for injunctive and declaratory relief. On April 28,
2005, plaintiff filed a motion for reconsideration. The basis for the motion is that the
court incorrectly assessed whether plaintiff
was prejudiced by the procurement irregularities we found to have occurred. In our
earlier opinion, we considered the argument
now advanced and therefore disagree with
plaintiff and deny the motion. For the limited purpose of more fully explaining the
court's reasoning, however, we provide the
following elaboration of that denial. In addition, we correct one typographical mistake.
The background facts can be found in the
prior opinion.

We begin with the typographic mistake.
At page 18 of the slip opinion, the court
states: "The violation of FAR § 15.306(d)(3)
is clear." That sentence should have read:
"The violation of FAR § 15.306(e)(1) is
clear." The discussion concerning
§ 15.306(d)(3) was concluded earlier. The
context for the statement was the error associated with permitting communications with
HMBI to affect the agency's treatment of
HMBI's technical proposal, a development
that was inconsistent with § 15.306(e)(1) and
with the stipulated dismissal. The clerical
error does not affect the outcome. The more
substantive issue raised in the request for
reconsideration relates to whether, in view of
our findings of error, the court should have
evaluated potential prejudice in light of what

might have occurred in the event of a second remand to the agency.

This procurement has a unique procedural history. It has been before the court twice. The first filing resulted in a stipulated dismissal, pursuant to which only two of the bidders, ORCA and HMBI, were entitled to reevaluation of their then-existing technical and pricing proposals. In this present, second bid protest, we found that "HUD committed two procedural errors during the reevaluation: ORCA was denied an opportunity to revise its * * * in the face of evolving HUD standards and the agency permitted a revision to HMBI's technical proposal." *Orca N.W. Real Estate Servs. v. United States,* No. 05–228C, 65 Fed.Cl. 1, 2005 WL 1025116 (Fed.Cl. Apr. 28, 2005). The motion for reconsideration deals only with the second violation, namely, that the agency's receipt and consideration of new information concerning HMBI's technical proposal amounted to a revision that constituted improper discussion. We noted that "[t]he TEP understood it was to reevaluate ORCA's and HMBI's technical proposals as they stood at the time of the June 2004 award." *Id.* at 4. "The TEP should have realized that it could not, under the ground rules of the reevaluation, consider these new developments while reevaluating the proposal." *Id.* at 11. The terms of the joint dismissal thus did not permit such revisions. The discussions also violated FAR § 15.306(e)(1), which prohibits agency discussions that are limited to one offeror.

The gist of ORCA's motion is that we improperly assessed prejudice retroactively, i.e., from the standpoint of what the likely outcome would have been if neither HMBI nor ORCA had revised its proposal during reevaluation. To the extent that the plaintiff characterizes how the court proceeded, it is correct. The practical effect of the court's approach was to strip away the errors, not by requiring new discussions with both offerors, which might have resulted in changes to

ORCA's proposal and pricing, but by attempting to return the parties to their original proposals and pricing. We took this approach because that was the limited nature of the agreement leading to dismissal.

In determining whether there was prejudice, we noted that, after correction of the price miscalculation, the differential between ORCA's proposal and HMBI's doubled. At the time of the initial award, HUD used the price differential between HMBI and ORCA to justify HMBI's selection despite the technical superiority of ORCA's proposal.[1] At the time of award reinstatement, ORCA's technical superiority had nearly vanished. We reasoned that, even if ORCA's former superiority were presumed, the proposals' doubled cost differential made it:

> significantly more likely than not that the two errors made no difference in the outcome. There were only two offerors being considered under the terms of the stipulated dismissal. If there were more than two offerors or if the offerors were closer in price, sending this procurement back to the agency might be a worthwhile exercise. Neither situation applies here, however.

*Id.* at 12.

ORCA takes a very different approach to assessing prejudice. It asks the court to assume its entitlement, given the violation of § 15.306(e)(1), to a wholly new opportunity for amending all aspects of its technical and price proposals. It comes to this conclusion on the basis of § 15.306(d)(1), a provision upon which the court did not rely. That subsection directs the contracting officer to conduct discussions, tailored to each offeror's proposal, "with each offeror within the competitive range." The court did not rely on that particular provision, however, in connection with this deficiency, because, in substance, such discussions already had taken place prior to the first protest. The errors here occurred only in connection with the limited reevaluation process and related to the more particularized concerns of § 15.306(d)(3),[2] the stipulated dismissal, and

---

1. It is worth noting that this was a "best value" procurement, meaning a proposal's technical evaluation was given greater weight than the evaluation of its pricing proposal. The price differential at the time of the initial award was

great enough to overcome the fact that ORCA outscored HMBI in the selection criterion of greatest import.

2. Subsection (d) of FAR § 15.306 governs exchanges between an agency and the offerors

§ 15.306(e)(1), which prohibits agency-offeror exchanges that "favor[ ] one offeror over another." The unique circumstances of this reevaluation appeared to the court to make § 15.306(e)(1) more applicable.

Plaintiff, having assumed, nevertheless, the general application of § 15.306(d)(1), goes on to argue, pursuant to § 15.307, another provision upon which the court did not rely, that it could have made potentially dramatic improvements to its technical and price proposal. On those assumptions, it argues that "the appropriate analysis for determining whether ORCA would have had a substantial chance for award is to consider the possible outcomes if HUD properly had re-opened fair and complete discussions and allowed ORCA and HMBI to submit final proposal revisions." Mot. Recons. at 7. Key to plaintiff's analysis is the argument that, had:

> HUD ... properly opened discussions and solicited final proposal revisions, those proposal revisions could not reasonably have been restricted to prohibit revisions to proposed prices.... ORCA would have lowered its price again if discussions were permitted before the reevaluation because ORCA learned during its first debriefing ... that it did not have the lowest priced proposal ....

Id. at 11–12. ORCA contends, in conclusion, that "this Court would have concluded that ORCA could have improved both its technical and its price standing relative to HMBI, and therefore, that ORCA has been prejudiced by HUD's procurement violations." Id. at 12.

As we discussed in our previous opinion, the stipulated dismissal and agreement to consider the prior proposals created a truncated, and virtually private, procurement process. It was not, for example, open to one particular initial offeror whose proposal had the greatest technical merit and an evaluated cost only marginally in excess of ORCA's revised cost. Moreover, the reevaluation was for a limited purpose—to reassess existing proposals. If the parties had contemplated the more general application of procurement processes, this was not reflected in their stipulation. While it violated the terms and spirit of the dismissal to permit, de facto, one party to amend its proposal, attempting to determine what the outcome likely would have been if the government had stuck to its side of the bargain does no more than implement the parties' agreement.[3]

Plaintiff also argues that the court's finding that there was no prejudice is inherently speculative because it is based on the assumption that ORCA would not have altered its substantive or pricing proposals. For that reason, plaintiff advocates an approach to violations of FAR § 15.306(d)(1) under which such a violation triggers a virtually automatic right in the wronged bidder under FAR § 15.307 to revise both its substantive and price proposals. For these reasons, plaintiff concludes, it is entitled to the benefit of the doubt as to the outcome of discussions that would take place on a second remand to the agency.

In a more typical instance of a violation of FAR § 15.306(d)(1) and (3), we might agree with ORCA. See, e.g., Dubinsky v. United States, 43 Fed.Cl. 243 (1999). The question of prejudice is resolved on the unique facts before the court, however. See Bannum, Inc. v. United States, 404 F.3d 1346 (Fed.Cir. 2005). We cannot ignore the peculiarities of this case.

The violation here, while significant because it buttressed HMBI's reevaluated tech-

---

within a procurement's competitive range. Subsection (d)(3) explicitly entitles a competitive offeror to the discussion of "significant weaknesses ... to which [it] has not yet had an opportunity to respond." We applied this mandate in our prior decision because HUD, during the reevaluation, employed a new evaluation standard that raised a significant weakness in ORCA's proposal where none had existed before. The agency was obligated, under subsection (d)(3), to engage ORCA in the discussion of this new shortcoming. Subsection (d)(1) more generally entitles all competitive offerors to at least one round of discussion, regardless of whether independent grounds exist for initiating discussions.

**3.** We appreciate that, in other circumstances, the determination of prejudice *vel non* could be viewed much as plaintiff suggests. Plaintiff's advocacy of a presumption of prejudice in the event of a violation of the "no discussion" rule, for example, has support. See *Int'l Resources Group*, 2001 Comp. Gen. ¶ 35 (2001); *Nat'l Med. Staffing, Inc.*, 95–1 Comp. Gen. ¶ 163 (1995).

nical score, was not intentional or systematic. As we explained above and in the prior opinion, this is not an instance in which the agency explicitly *invited* one party to revise its proposal. The violation was inadvertent. We have no reason to think that HMBI knew it was participating in a process to amend its substantive proposal. The changes to the scoring, moreover, were narrow. The new information did not constitute a comprehensive revision of HMBI's proposal. In short, the remedy ORCA proposes, namely, throwing open the procurement process to HMBI and ORCA for all purposes, goes far beyond the violation and goes far beyond the contemplation of the stipulated dismissal. The benefit, moreover, of such a remedy to the more public interest in openness or generating a better value to the government is plainly less than if ORCA were advocating a broader reopening of the procurement to include all interested bidders.

We found earlier that, if the reevaluation had been conducted without error, it was virtually certain that plaintiff would not have been awarded the contract. Because of the unique and limited character of the stipulated reevaluation, we deem it inappropriate to speculate what might have happened if the discussion process had been re-opened more generally. Without deciding what might be the proper approach in the absence of an agreement, in the absence of such substantial price differences, in the presence of more than two bidders, or in the event of more comprehensive or intentional violations, we find it fair under the circumstances to hold plaintiff to the process it agreed to. There was no prejudice because, if ORCA had received the consideration it agreed to in the dismissal, it is a virtual certainty that it would not have received the award.