**James Ray STANLEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 12–167 C.**

United States Court of Federal Claims.

Oct. 23, 2012.

---

James Ray Stanley, Bolivar, Tennessee, Plaintiff, pro se.

Karen V. Goff, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York City, for Defendant; of counsel, Major Wayne H. Williams, U.S. Army Litigation Division, Department of the Army, Fort Belvoir, Virginia.

## OPINION

DAMICH, Judge:

Plaintiff here seeks "money damages and retirement relief" pursuant to a claim, filed in 2012, that he was wrongfully discharged from the United States Army in December 1991. Second Am. Compl. 1 ("Compl."). The Government has moved the court to dismiss the complaint for lack of jurisdiction, as barred by the six-year statute of limitations applicable to this court under 28 U.S.C. § 2501, or, in the alternative, for judgment on the Administrative Record ("AR").

Because Mr. Stanley's cause of action accrued at the time of his discharge in 1991, the six-year limitations period concluded in December 1997. As there are no sound grounds for tolling the limitations period or suspending the accrual of his claim, the court is obligated to grant Defendant's motion and to dismiss the complaint for lack of jurisdiction.

*Background*

Mr. Stanley enlisted in the Army in March 1977. Compl. 2; AR 147–50. In December 1989, after having held various leadership positions, AR 62, and having earned a number of awards and medals, AR 59, he was promoted to the rank of sergeant first-class. Compl. 2; AR 60. In April 1991, he was serving as a platoon sergeant with the 127th Signal Battalion at Fort Ord, California. Compl. 2; AR 62. He reenlisted for a period

of six years on May 31, 1991. Compl. 2; AR 115–17.

Mr. Stanley's discharge from the Army stemmed from an investigation initiated in August 1991 into allegations that he had engaged in acts of sexual harassment. AR 39–57, 64. On October 8, 1991, court martial charges were preferred against Mr. Stanley. Compl. 2; AR 31–36. The charges included eight specifications of maltreatment by communicating offensive comments in violation of Article 93 of the Uniform Code of Military Justice ("UCMJ"). AR 31–33. He was also charged with specifications of communicating offensive comments, committing indecent assaults, communicating threats to injure, and soliciting to comment adultery, in violation of Article 134 of the UCMJ. AR 34–36. Mr. Stanley's immediate commanders recommended trial by court-martial. Compl. 2; AR 29–30. An officer was appointed to investigate the court-martial charges in accordance with Article 32b of the UCMJ. AR 28. The investigating officer notified Mr. Stanley that an investigation hearing would be conducted on October 31, 1991, and that Mr. Stanley had the right to be present, to be represented by legal counsel, and to present his own witnesses. AR 27.

No court-martial proceeding was held. Instead, on November 12, 1991, Mr. Stanley signed and submitted a "Request for Discharge for the Good of the Service." AR. 24–25. In the request, Mr. Stanley stated that he was "voluntarily" seeking discharge pursuant to Army Regulation 635–200, Chapter 10, in the face of the UCMJ charges preferred against him. *Id.*, ¶ 1. He stated that his request was "of my own free will" and that he had not been subjected to "any coercion whatsoever by any person." *Id.*, ¶ 2. He acknowledged that he had been afforded the opportunity to consult with counsel and that, although he had been provided legal advice, "this decision is my own." *Id.*, ¶ 3. He further acknowledged that, if his request for discharge was accepted, he could receive an "other than honorable discharge," which would deprive him of many or all Army benefits and that he might lose the eligibility for benefits administered by the Veterans Administration. *Id.*, ¶ 4. His re-

quest was also signed by his military counsel, attesting that Mr. Stanley had "personally made the choice" of requesting "discharge for the Good of the Service." AR 25.

Mr. Stanley also submitted a signed statement accompanying his request for discharge, in which he explained that he was the sole parent of two minor children and could not risk leaving his children "to an unknown fate" if he were convicted and sentenced to confinement. AR 23.

Mr. Stanley's three immediate commanders each recommended approval of his "under other than honorable" discharge. AR 22. On November 18, 1991, Major General Marvin L. Covault, the Commander of the 7th Infantry Division and Fort Ord, acting as the general court-martial convening authority ("GCMCA"), approved Mr. Stanley's discharge under other than honorable conditions and dismissed the court-martial charges. AR 21. On December 10, 1991, the Army issued Mr. Stanley's "Certificate of Release or Discharge from Active Duty," DD Form 214, establishing his "Separation Date" as December 10, 1991. The Certificate stated that his discharge was "Under Other Than Honorable Conditions" "for the good of the service—in lieu of court-martial." AR 14.

On December 11, 2007, Mr. Stanley filed an application with the Army Board for Correction of Military Records ("ABCMR") requesting that his discharge be upgraded to honorable and that he be given an early medical retirement or a length of service retirement. AR 9. He expressed that his military record was in error because he had been under duress ("because of my children") when he submitted his 1991 request for discharge in lieu of court-martial and because he had ineffective counsel at that time. *Id.* He also asserted that, "for years prior to discharge and after," he had an undiagnosed medical condition, bipolar disorder/schizophrenia, that ran in his family and that was the cause of his behavioral misconduct. *Id.* In support of his application, he submitted a "Treatment Plan" from Quinco Mental Health Centers, dated November 1, 2006, that noted a primary diagnosis of "Bipolar

Affective Disorder, Depressed, Severe, Specified as with Psychotic Behavior." AR 11.

The ABCMR denied Mr. Stanley's requests on March 20, 2008. AR 3–8. It observed that he had received a Noncommissioned Officer (NCO) Evaluation Report for the period from June 1990 to January 1991 that described him as an extremely competent NCO and an intelligent soldier who sought self-improvement. AR 4. It also noted that Mr. Stanley had undergone a physical examination on August 12, 1991, and was found qualified for retention with the highest level of medical fitness in five of the six functional capacities. AR 2, 4–5. In addition, it noted that he had undergone a mental status evaluation on September 20, 1991. Based on that evaluation, the Board concluded, "There was no evidence of mental defect, emotional illness, or psychiatric disorder of sufficient severity to warrant disposition through military medical channels. He was psychiatrically cleared for any administrative or judicial action deemed appropriate." AR 3. Despite the 2006 Treatment Plan that diagnosed bipolar disorder, the Board determined that there was "no evidence of record which shows the applicant was diagnosed with any mental or medical condition prior to his discharge." *Id.*

Based on its review of his application, the Board concluded that Mr. Stanley's 1991 discharge in lieu of court-martial "was administratively correct and in conformance with applicable regulations"; that his record of service was "insufficiently meritorious to warrant a general or honorable discharge"; that there was no evidence to support his contention that he had mental problems prior to his separation from service; that there was insufficient evidence warranting an early medical retirement; and that his term of creditable service was well short of the 20 years of service required for a length of service retirement. AR 5–6.

Mr. Stanley filed his complaint in this court on March 12, 2012. His second amended complaint was accepted for filing on June 13, 2012.

*Legal Standards*

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995).

It is well-established, however, that subject-matter jurisdiction is "a threshold question that must be resolved ... before proceeding to the merits" of a claim. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). When this court's jurisdiction is challenged, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

The limitations period for filing a claim in the United States of Federal Claims is six years, per Section 2501 of Title 28 of the United States Code: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The Supreme Court has affirmed that the six-year period prescribed by § 2501 is jurisdictional, that is, that it is a condition of the government's waiver of sovereign immunity and must be strictly construed. *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 134–36, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *see also Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed. Cir.1988); *Reed Island–MLC, Inc. v. United States,* 67 Fed.Cl. 27, 33 (2005). As a jurisdictional defense, the statute of limitations is properly asserted in a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *Reed Island–MLC,* 67 Fed.Cl. at 32.

Although a *pro se* plaintiff, as Mr. Stanley is here, is held to less stringent standards in the formalities of his pleadings, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30

L.Ed.2d 652 (1972), the court is allowed no discretion to bend the requirements of jurisdiction in his favor. A court may not, for example, take a liberal view of jurisdictional requirements for *pro se* litigants as it might with respect to "mere formalities" in a summons and complaint. *See Kelley v. Sec'y of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987).

On a motion for judgment on the administrative record, as Defendant argues in the alternative, RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing factfinding by the trial court." *Bannum v. United States*, 404 F.3d 1346, 1356 (Fed.Cir.2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355–56. Questions of fact are instead resolved by the court by reference to the administrative record. *Id.* at 1356.

*Discussion*

It is undisputed that Mr. Stanley's discharge from the Army was effectuated in December 1991.[1] His complaint in this court for unlawful discharge was filed in March 2012, more than 20 years later (and more than 14 years after the limitations deadline, which would otherwise have been December 1997). The question presented, then, is whether there are any circumstances or exceptions that would ameliorate the consequences of this court's six-year statute of limitations.

As an initial matter, Defendant properly notes that it is well established that a cause of action for money damages for wrongful discharge accrues upon discharge. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003). Moreover, the claim for back pay is not a continuing claim that continues to move forward the starting date for accrual as the payments allegedly owed accumulate had the service member remained on active duty. *Id.* Nor does the option of the service member to seek relief from a military corrections board extend the accrual date of the claim. "[A] plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Id.* at 1304. The decision of the corrections board also does not create a new cause of action. *Id.* at 1312.

Mr. Stanley's complaint and response to Defendant's motion to dismiss suggest two arguments to overcome dismissal of his action. On the grounds of "legal disability," he seeks to overcome the otherwise strict deadline of § 2501's six-year limitations period. Alternatively, he would have the court apply the accrual suspension rule to delay the onset of his cause of action and thus suspend the ticking of the six-year clock.

Paragraph three of § 2501 provides that "[a] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." It is a "high hurdle" to toll the statute of limitations on the claim of a legal disability. *Ware v. United States*, 57 Fed.Cl. 782, 788 (2003). The legal disability must be such that it impairs the claimant's access to the courts. *Goewey v. United States*, 612 F.2d 539, 544 (Ct.Cl.1979). A plaintiff claiming a mental illness must show that his condition "render[ed] the sufferer incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities." *Id.*

But here Plaintiff has presented no evidence that he had any mental health issues at the time of the incidents that led to the consideration of court martial charges against him. The only evidence in the record of his having any mental illness is the 2006 Treatment Plan indicating a diagnosis of "Bipolar Affective Disorder." AR 11. Nowhere in this document, however, is there any basis for concluding that Mr. Stanley suffered this condition prior to 2006 and certainly not as far back as his discharge from the Army in

---

1. Mr. Stanley avers that his discharge did not take place until December 11, 1991, because he was called back to base to sign a Post Installation Clearance Form, DD Form 137, in order to sign out formally from his battalion. The court finds that determining the precise date of his discharge in December 1991 is unnecessary to the resolution of this motion to dismiss.

1991. Moreover, the record does affirmatively reflect that he received a mental health evaluation on September 20, 1991, at the request of his Army command just prior to his discharge. The evaluation reported that he "[h]as the mental capacity to understand and participate in the proceedings" and concluded, "There is no evidence of mental defect, emotional illness, or psychiatric disorder of sufficient severity to warrant disposition through military medical channels." AR 37. There is thus a complete dearth of evidence that he did not understand the court martial charges against him or that his request for discharge in lieu of court martial was made under any cloud of mental disability. In addition, Plaintiff's voluntary statement that he was motivated to seek discharge in lieu of court martial out of concern for his children, rather than face the risk of confinement, suggests an informed and rational understanding of his situation.[2] The court finds no basis here for tolling the statute of limitations.

■ Tolling the running of the limitations clock is distinct from suspending the accrual of the claim. Tolling suspends the clock during the pendency of the claim, that is, once the claim has accrued. "A cause of action first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Holmes v. United States,* 657 F.3d 1303, 1317 (Fed.Cir.2011). Under the accrual suspension rule, on the other hand, the clock doesn't even begin to tick "until the claimant knew or should have known that the claim existed." *Martinez,* 333 F.3d at 1319.

The Federal Circuit has cautioned that the accrual suspension rule is strictly and narrowly applied. *Id.* For the accrual suspension rule to apply, the plaintiff "must either show that defendant has concealed its acts with the result that plaintiff was unaware of

their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Id.* (quoting *Welcker v. United States,* 752 F.2d 1577, 1581 (Fed.Cir.1985)); *see also Holmes v. United States,* 657 F.3d 1303, 1317 (Fed.Cir.2011).[3]

■ Plaintiff's case for suspending the accrual of his cause of action founders in both respects. The "act" of the Army in acceding to Plaintiff's request for discharge in lieu of court martial was in no way concealed. To the contrary, in the Government's parlance, "the Army's preferral of court-martial charges against Mr. Stanley was open and notorious." Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for J. on the Admin. R. 17. The Administrative Record reflects Mr. Stanley's signature on the December 10, 1991, DD Form 214, "Certificate of Release or Discharge from Active Duty," AR 14; his signature of the same date on DA Form 664, "Service Member's Statement Concerning Compensation from the Veterans Administration," AR 15; his signature, and multiple entry of his initials, dated November 27, 1991, on FO Form 1–66–2, "Transition Counseling Acknowledgement Checklist," AR 17–18; his signature, dated December 10, 1991, acknowledging receipt of his letter of debarment from Major General Marvin L. Covault, AR 19–20; his signature, dated November 12, 1991, on his memorandum requesting discharge "for the good of the service" (in which he acknowledged that his request was "of my own free will," not subject to any coercion, that he had consulted with legal counsel and had been advised of his rights under the Uniform Code of Military Justice, and that he understood that his discharge would be under other than honorable conditions), AR 24–25; and his signature, dated August 15, 1991, acknowledging receipt of his "Notification of Relief for Cause," AR 65; among other documents.

---

**2.** Nor did his choice of discharge out of consideration for his children's welfare suggest duress. "The fact that an employee is faced with an inherently unpleasant situation or that his choice is limited to two unpleasant alternatives does not make an employee's decision any less voluntary." *Covington v. Dep't of Health and Human Services,* 750 F.2d 937, 942 (Fed.Cir.1984).

**3.** In *Holmes,* the Federal Circuit also explained that the "concealed or inherently unknowable" test is used interchangeably with the "knew or should have known" test and includes "an intrinsic reasonableness component." *Holmes,* 657 F.3d at 1320.

The Record also reflects the signature of his military counsel attesting that Mr. Stanley was advised of his rights and personally opted to seek discharge in lieu of court martial. AR 25.

While Mr. Stanley argues in his response to the motion to dismiss that he received ineffective assistance of counsel, he was nevertheless on plain notice of the court martial charges and of his choice of discharge rather than undertake the risk of confinement as a result of the court martial. AR 23. The full record of the charges preferred against him, the documents relating to his choice in favor of discharge in lieu of court martial, the records of his counsel during the course of the proceedings, and his rights under the Manual for Courts-martial and Army regulations relating to discharge were all readily available to him during that time and subsequently. Accordingly, it is beyond apparent that there was no "concealment" of any acts on the part of the Government and that his alleged "injury," discharge from active service under other than honorable conditions, was in no way "unknowable." Thus, under § 2501 he had six years from the time of his discharge to file his claim before this court.

Mr. Stanley is in a posture similar to that of the plaintiff in *Martinez*, where "as of the date of his discharge from active duty, he knew that he had been discharged and, as far as he was concerned, his discharge had been unlawfully procured." *Martinez*, 333 F.3d at 1319.

*Conclusion*

Because he filed his claim in 2012, nearly 15 years past the six-year limit allowed under the statute of limitations since the accrual of his cause of action in 1991, this court no longer has jurisdiction. Defendant's motion to dismiss is therefore granted.[4] The Clerk

---

4. Given the court's determination of lack of jurisdiction because of the running of the statute of limitations, it is unnecessary to decide Defendant's alternative motion for judgment on the administrative record. On the same basis of lack of jurisdiction, the court denies as moot Plaintiff's September 17, 2012, motion "to bar transfer negotiation and endorsement." Plaintiff's

of Court is directed to dismiss Plaintiff's complaint accordingly.

September 5, 2012, motion to strike "any laches defense" is denied as moot because Defendant has not raised any such defense. In addition, Plaintiff's recently submitted (by fax to chambers) "Motion to Stay Proceedings" and "Motion to Rescind Stay [sic] Partial Judgment" are denied as moot.