MOORE, Circuit Judge,
dissenting.
The majority in this case affirms the decision by the Court of Federal Claims granting judgment on the administrative record in favor of the government. I dissent because the court erred by concluding that the U.S. Navy had a rational basis for finding that Glenn Defense Marine (Asia), PTE Ltd. (GDMA) deserved an overall rating of “Less than Satisfactory” for its past performance. That rating lacks a rational basis, both legally and mathematically. All of GDMA’s references rated its past performance as “Outstanding,” “Better,” or “Satisfactory.”
As part of the U.S. Navy’s process of awarding a contract for maritime husbanding services in the South Asia region, a Past Performance Evaluation Team (PPET) evaluated the offerors’ past performance. The PPET was instructed to use adjectival ratings: “Outstanding,” “Better,” “Satisfactory,” “Less than Satisfactory,” or “Neutral.”
*913 Four of GDMA’s references provided feedback regarding its past performance. The PPET determined that one of the prior contracts, the South Asia contract, was highly relevant to the contract at issue while the other three were moderately relevant. Of the moderately relevant contracts, two reviewers rated GDMA as “Outstanding” while the third gave it a rating of “Better.” The reviewer for the highly relevant contract rated GDMA as “Better.” The PPET received a second questionnaire regarding the South Asia contract from the contracting officer, who rated GDMA as “Satisfactory.” The chart below summarizes the references’ overall ratings of GDMA’s past performance.
Reference Overall Rating
South Asia Contract First Reference Second Reference Better Satisfactory
Thailand Contract Better
Singapore Contract Outstanding
BIMET Contract Outstanding
Despite these high past performance ratings, the PPET gave GDMA an overall past performance rating of “Satisfactory.” This seems inconsistent with the ratings themselves. Even more perplexingly, based on no new or additional information, the PPET later revised GDMA’s past performance rating downward to “Less than Satisfactory.” The purported basis for such a low rating was negative comments that some of GDMA’s references included in the past performance questionnaires they submitted. GDMA’s references, however, did not themselves believe that their own negative comments warranted such a low rating. And GDMA’s references were uniquely positioned to consider the appropriate impact to give their own negative comments on GDMA’s overall rating, given their interaction with GDMA over the course of the contracts at issue. The PPET group, which decided to give GDMA a less than satisfactory rating, based their decision exclusively on these references; they had no additional or independent information which would warrant lowering the ratings. GDMA received two “Outstanding,” two “Better,” and one “Satisfactory” rating. In what universe do these ratings average out to an overall rating of “Less than Satisfactory”? The Navy lacked a rational basis for giving GDMA a lower rating than any of the company’s references and for weighing the negative comments on the questionnaires far more heavily than the references themselves did.
It is important to understand that each of these reviews had an overall past performance rating, nine sub category ratings, and a section for comments. It is true that one of the two reviewers for the South Asia contract listed a number of problems that he encountered with GDMA in the performance of the contract. Even this reviewer, who rated GDMA “Satisfactory” overall, gave GDMA one “Better,” four “Satisfactory,” and four “Less than Satisfactory” subcategory ratings. And the primary reviewer for the South Asia contract, who gave GDMA a “Better” overall rating for the same contract, gave GDMA four “Outstanding,” four “Better,” and one “Satisfactory” rating for the same nine sub category rating criteria. This reviewer noted in her comments some of the same problems, but also included positive comments such as, “[t]hey are very professional and their staff are very knowledgeable and experience[d].” She further explained that, “[t]he ports in South Asia ha[ve] limited infrastructure and GDMA has the ability to support a carrier visit to Chennai with limited services available.” In the other three contracts, there were a total of twelve “Outstanding,” six “Better,” and one “Satisfactory” subcategory rating. In light of this record, PPET did not have a *914 rational basis for rating GDMA “Less than Satisfactory” overall for past performance.
PPET did its own cumulative version of the nine subcategory rating criteria, and its conclusions regarding the subcategories seem just as divorced from the underlying data as the overall ratings. For example, the PPET gave GDMA an overall rating of “Satisfactory” for the subfactor “Reliability and consistency of the company’s key personnel.” The individual ratings for this subfactor, however, were three “Outstanding” ratings, one “Better,” and one “Satisfactory.” Similarly, for the' subfactor of “Timeliness in providing goods and/or services in accordance with the contract schedule,” the PPET rated GDMA as “Satisfactory” even though GDMA’s references gave it three “Outstanding” ratings, one “Better,” and one “Satisfactory.”
GDMA’s past performance was not flawless, as the ratings clearly reflect. Certainly this record would have supported a past performance rating of “Better” or maybe even “Satisfactory,” but there is no rational basis for PPET’s decision to rate GDMA “Less than Satisfactory.”
GDMA was one of only two bidders in the competitive range, and its price was roughly 64% lower than the other bidder. GDMA was rated equal to the other bidder on every factor except past performance, where the other bidder received a rating of “Better.” Based on GDMA’s lower price and equivalency in other areas, I believe that it would have had a substantial chance to receive the contract but for the Navy’s errors regarding past performance. See Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed.Cir.2005). Therefore, I dissent.