Steven G. HAYES, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 10–189 C.

United States Court of Federal Claims.

Nov. 18, 2010.

Steven G. Hayes, Elizabethtown, Kentucky, pro se.

P. Davis Oliver, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice.

## OPINION

DAMICH, Judge:

In this action, Plaintiff seeks judicial review of a decision of the Army Board for Correction of Military Records ("ABCMR" or "the Board") denying his request to correct the date of rank of his promotion to Captain (with resultant pay and allowances). Before the court are the parties' cross-motions for Judgment on the Administrative Record ("AR").

The dispute centers on the requirement, pursuant to 10 U.S.C. § 12205, of a baccalaureate degree as a condition of appointment above the rank of first lieutenant, the Army's authority under the statute to waive the degree requirement in certain circumstances, and the Army's determination to limit the waiver granted to Plaintiff to "promotion consideration only," reserving his actual promotion until he obtained his degree. Plaintiff argues that the Army's waiver authority "is either on or off" and that, having granted him a waiver pursuant to the statute, the date of his promotion (i.e., "date of rank")

should be adjusted back to the date of his promotion eligibility, rather than the later date on which he obtained his baccalaureate degree.

For the reasons stated below, the court grants judgment in favor of Defendant and denies Plaintiff's cross-motion.

## I. Background

Plaintiff enlisted in the Army in August 1986 and served on active duty until honorably discharged in May 1988. AR 105, 159, 286–89. He returned to active duty in the Army in September 1999 to attend Officer Candidate School ("OCS"). Compl. ¶ 7; AR 281. He was commissioned a second lieutenant in the Army Reserve in December 1999. AR 226, 263. He was called to active duty to attend flight training from January 2001 to February 2002. Compl. ¶ 7. He served in Operation Iraqi Freedom from January 2003 until April 2004. *Id.* He currently serves in the Active Guard Reserve program ("AGR"). *Id.*

In September 2005, Plaintiff requested an exception to the general statutory requirement of a baccalaureate degree for promotion above the rank of first lieutenant. Compl. ¶ 10. The requirement for such degree is specified in 10 U.S.C. § 12205(a), which provides in relevant part, "No person may be appointed to a grade above the grade of first lieutenant in the Army Reserve ... unless that person has been awarded a baccalaureate degree by a qualifying educational institution."

Subsection (d), however, provides authority for a waiver for Army OCS graduates, et al. It provides, "The Secretary of the Army may waive the applicability of subsection (a) to any officer whose original appointment in the Army as a Reserve officer is through the Army Officer Candidate School program." 10 U.S.C. § 12205(d)(1).

It further provides, in relevant part, "Any such waiver shall be made on a case-by-case basis, considering the individual circumstances of the officer involved, and may con-

tinue in effect for no more than two years after the waiver is granted." 10 U.S.C. § 12205(d)(3).

The Commander of the Army's Human Resources Command ("HRC") has been delegated the authority by the Secretary of the Army to determine whether to approve waivers of the educational degree requirement. AR 50. On October 24, 2005, the Chief of the HRC Office of Promotions and Reserve Components signed a memorandum to the President of the "2005 CPT APL Promotion Board" noting that *"[u]nder Section 12205, Title 10, United States Code,"* the Secretary of the Army has the authority to approve waivers of the statutory civilian education requirement. *Id.* (emphasis added). The memo advised that "[a]ccordingly, the Commander, Human Resources Command has approved a waiver for 1 LT Hayes. This waiver is granted for promotion consideration only. The officer must complete the required civilian education to be promoted. This waiver expires on 25 Oct 07." *Id.*

Thereafter, on February 2, 2006, the HRC notified Plaintiff that the Army Reserve Components Selection Board had convened on November 7, 2005, and "selected you for promotion." Plaintiff was advised in the letter that he had received an exception to the education requirement "for promotion consideration purposes," that he had to complete the requirement no later than November 10, 2007, and that he must provide a copy of the degree diploma to his promotion authority. Specifically, he was advised that "[y]our promotion cannot be finalized until the civilian education requirement has been met." AR 47.

Mr. Hayes obtained a baccalaureate degree from Excelsior College on August 17, 2007. The Army therefore promoted him to the rank of Captain with an effective date, and official "date of rank," of that date.

## II. Procedural History

In September 2007, Plaintiff filed an "Application for Correction of Military Record" requesting that his date of rank be corrected to "7 February 2006," the date he asserts [1]

---

**1.** The parties are in dispute as to Plaintiff's Promotion Eligibility Date ("PED"). HRC cited the date as February 6, 2007 (AR 47); Plaintiff claims it is February 7, 2006 (Compl. ¶¶ 12, 15).

was his eligibility date for promotion, rather than the date he received his diploma. AR 37–41. In a narrative he attached to his application, he objected to HRC's limit of the statutory waiver to promotion consideration only, arguing that HRC had no authority to "be more stringent" than the plain text of the statute. He noted that he was in fact "selected for promotion by the 2005 RCSB [Reserve Components Selection Board]" and therefore his promotion by virtue of the waiver should have been effective as of his eligibility date. "Whether a degree is conferred on the first day of the waiver or the last, it makes no difference." AR 39–41.

The ABCMR sought an advisory opinion from the Chief of Special Actions for the Department of the Army Promotions Branch, which, on February 12, 2008, recommended the denial of Mr. Hayes's request for a change of date of rank. AR 28–32. Subsequently, on December 10, 2008, the ABCMR denied his request. AR 12. The Board explained that "until such time as the law [10 U.S.C. § 12205(a) ] is changed to specifically allow individuals to be promoted above the rank of first lieutenant without a baccalaureate degree, there appears to be no basis to grant" his request. AR 19. The Board seemed to be concluding that, while subsection (d) provided authority for a waiver of the education requirement "on a case-by-case" basis, subsection (a) nevertheless established an absolute prohibition to promotion without the degree. Thus, the waiver authorized by subsection (d) was applicable to "selection" for promotion, rather than promotion itself:

> As a result, the applicant was able to be selected for promotion with an educational waiver instead of being twice nonselected for promotion and subsequently being discharged. Once he received his degree, provided it was within the 2–year period of the waiver, he could be promoted on the date the degree was conferred.

*Id.*

On July 22, 2009, Plaintiff formally requested reconsideration of the decision of the ABCMR. On reconsideration, the Board concluded that the original decision was justified and denied Mr. Hayes the relief he

sought. AR 7. In its decision, it concluded—inexplicably—that "[t]here is no evidence that the applicant applied for or was granted a waiver under the provision of the law." AR 6. The parties here agree that Plaintiff did indeed apply for a waiver. Def.'s Mot. 4. Nonetheless, the Board concluded that

> The law is void of any language prohibiting civilian education waivers for promotion consideration. Therefore, it appears well within the discretionary authority of the Secretary of the Army, as implemented by HRC, to allow a civilian education waiver for promotion consideration separate and apart from the civilian education requirement for promotion and defined exceptions and waiver authority provided in Title 10, U.S.Code, section 12205.

*Id.*

Plaintiff filed the instant complaint with the United States Court of Federal Claims on March 10, 2010.

### III. Jurisdiction and Standard of Review

■ Under the Tucker Act, 28 U.S.C. § 1491(a)(1), a party may bring a claim against the United States in this court if it is founded on the Constitution, an Act of Congress, a regulation, or a contract, excepting claims sounding in tort. The Tucker Act establishes a waiver of sovereign immunity but does not itself create a substantive right to recover damages. Instead, a plaintiff must identify a money-mandating provision as the basis of his claim.

■ Here, the Military Pay Act, 37 U.S.C. § 204(a), provides the jurisdiction for Plaintiff's claim. "[M]embers of a uniformed service on active duty are entitled to the pay corresponding to the pay grade at which they [serve]." *Parker v. United States*, 72 Fed.Cl. 151, 154 (Fed.Cl.2006). "As far as military personnel are concerned, [the Military Pay Act] serves as a money-mandating statute." *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir.1998).

■ In reviewing a decision of a military corrections board, the court seeks to determine "whether the decision is arbitrary,

Given the court's conclusion, resolution of the dispute over the date is not required.

capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998). The court does not sit, however, as a "super correction board." *Skinner v. United States,* 594 F.2d 824, 830 (Ct.Cl.1979). Where, as here, the parties have filed cross-motions for judgment on the administrative record, Rule 52.1 of the Rules of the Court of Federal Claims provides for the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum v. United States,* 404 F.3d 1346, 1356 (Fed.Cir. 2005). Questions of fact are resolved by reference to the administrative record. *Id.*

## IV. Discussion

It is apparent to the court that the parties are not disputing the facts of the matter but rather the proper interpretation of the statute and whether the Army's interpretation of the statute is entitled to deference.

Defendant argues that its waiver of the education requirement on Plaintiff's behalf for promotion consideration only is both plainly authorized by the text of the statute and, under the two-part test established by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), a permissible construction of the statute.

### A. Plain Reading of the Statute

Section 12205(a) of the statute clearly lays out the general rule prohibiting promotion above the grade of first lieutenant "unless that person has been awarded a baccalaureate degree"; section 12205(d) then establishes an exception, providing the discretionary authority of the Army to waive the prohibition "on a case-by-case basis" for up to two years. Thus, according to Defendant, because promotion consideration is logically an initial component of the larger step of promotion itself, "the authority to waive the education requirement for purposes of promotion consideration" is "necessarily encompassed within the express authority to grant a waiver for appointment purposes." Def.'s Mot. 9.

Plaintiff does not dispute the Army's discretion in the first instance, but rather the Army's authority under the statute to go half the distance, so to speak, via a partial, deferred, or conditional waiver. "There is no argument that the Secretary of the Army has the authority to grant, or not to grant[,] a waiver under 10 U.S.C. § 12205(d). However the words of the statute are unambiguous and clearly do not give the authority to limit the waiver to consideration only purposes. It is either on or off." Pl.'s Mot. 5–6.

■ The court is not convinced by Defendant's argument that the statute plainly authorizes the grant of a waiver solely for promotion consideration rather than promotion itself. While there is a certain appeal to Defendant's argument that the Army's discretion under the statute to waive or not to waive the education requirement inherently includes the discretion "to adopt an approach that logically falls between those two extremes," Def.'s Mot. 11, it is not founded on the plain, unambiguous text of the language of the statute itself. In support, Defendant cites as "directly on point" the decision in *Washington Environmental Council v. National Marine Fisheries Serv.,* No. C00–1547, 2002 WL 511479, 2002 U.S. Dist. LEXIS 5432 (W.D.Wash.2002). In *Washington,* the court noted the statutory authority of the National Marine Fisheries Service ("NMFS") to apply a "blanket take prohibition" for the protection of salmon under § 4(d) of the Endangered Species Act ("ESA"). 16 U.S.C. § 1533(d). One issue was whether the statute provided authority for a limited take prohibition.

In upholding the authority of the agency, the district court concluded,

> The language of 4(d) makes it clear that NMFS "may" impose a take prohibition. The unavoidable implication is that NMFS may, in its discretion, choose not to impose a take prohibition. NMFS's decision to craft a limited take prohibition under 4(d) must be, a fortiori under this analysis, within its discretion. The rule does not state that NMFS may choose only to apply a blanket take prohibition, or no take prohibition at all. It is logically within the agency's discretion, therefore, that applying any number of different varieties of

(otherwise legal) take prohibitions is also within NMFS's discretion. *Id.* 2002 WL 511479, at *7–8, 2002 U.S. Dist. LEXIS 5432, at *23–24.

There is a key difference, however, in the statutory language of § 4(d) of the ESA as compared to that of § 12205(d) at issue here. In § 4(d), the discretionary authority to apply to threatened species "any or all" of the prohibitions that automatically apply to endangered species is immediately preceded by the specific grant of authority to the Secretary [of the Interior] to "issue such regulations as he deems necessary and advisable to provide for the conservation of such species." 16 U.S.C. § 1533(d). There is no such comparable general authority granted to the Secretary of the Army to issue "regulations" regarding the educational waiver. Accordingly, this court does not find that § 12205(d) plainly authorizes the Army to limit the education waiver to promotion consideration.

### B.  Judicial Deference to Agency Interpretation

█ Nor, however, does it plainly prohibit such a limitation. In this respect, Defendant is on somewhat more credible, but ultimately unavailing, ground in its argument that "the Army's interpretation of the statute is entitled to deference under *Chevron* because it is a permissible construction of the statute." Def.'s Mot. 12. Under *Chevron*, the Supreme Court addressed the power of an administrative agency to administer a statutory program by formulating policy and making rules "to fill any gap left, implicitly or explicitly, by Congress." 467 U.S. at 843, 104 S.Ct. 2778. "Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. 2778.

█ In *United States v. Mead Corp.,* 533 U.S. 218, 226, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), the Supreme Court considered "the limits of *Chevron* deference owed to administrative practice in applying a statute." The Court held that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 226–27, 121 S.Ct. 2164. The Court observed that the inquiry whether Congress intended to delegate authority to make such rules could be determined through a variety of ways, "as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent." *Id.* at 227, 121 S.Ct. 2164. In its assessment of the limits of judicial deference, the Court in *Mead* recognized that Congress need not necessarily have expressly delegated the authority "to implement a particular provision or fill a particular gap." *Id.* at 229, 121 S.Ct. 2164. "[I]t can still be apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law." *Id.* As to the particular "question" in *Mead*—whether a tariff classification ruling of the United States Customs Service was entitled to such deference—the Court found that Customs's classification rulings presented "a case far removed not only from notice-and-comment process, but from any other circumstances reasonably suggesting that Congress ever thought of classifications rulings as deserving the deference claimed for them here." *Id.* at 231, 121 S.Ct. 2164. "Classification rulings," the Court concluded, "are beyond the *Chevron* pale." *Id.* at 234, 121 S.Ct. 2164.

█ The Court nonetheless noted that the lack of entitlement to *Chevron* deference does not necessarily "place [an agency interpretation] beyond the pale of any deference whatever." *Id.* Under the precedent of *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (holding that the rulings, interpretations, and opinions of the Administrator of the Fair Labor Standards Act constitute a "body of experience" to which courts may properly resort for guidance), an agency interpretive rule "is eligible

to claim respect according to its persuasiveness," especially where "the regulatory scheme is highly detailed, and [the agency] can bring the benefit of specialized experience to bear on the subtle questions" at issue. *Mead*, 533 U.S. at 234, 235, 121 S.Ct. 2164.

On the basis of the foregoing, the court finds here that *Chevron* deference is unjustified, as there is no "ambiguity" in the statute nor any "question" to answer or "gap" or "space" left to be completed in the particular provision. *See, e.g., Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) ("When an agency fills such a 'gap' reasonably ... the courts accept the result as legally binding."). In this respect, Plaintiff's reading of the statute is more exact. The statute first establishes a general prohibition against promotion ("appoint[ment] to a grade ...") without the baccalaureate degree; the later section allows the promotion for a limited time based on a discretionary waiver. The prohibition prescribed in § 12205(a) thus may be waived pursuant to the authority set out in § 12205(d). Unlike the "highly detailed" regulatory scheme of the Customs Service in *Mead*, the issue here does not pose a "subtle" question to which the Army applies its specialized experience. The statute includes no language directing the Secretary of the Army to prescribe rules and regulations to "implement" the waiver. Although the "individual circumstances of the officer involved" may, and undoubtedly will, involve subtle considerations, the statutory authority to grant the waiver or not does not require filling in any lacuna or interstitial gap in the law. The court does not find persuasive Defendant's argument that the statute inherently incorporates authority for waiving the educational requirement short of promotion itself.

### C. The Army did not grant Plaintiff a waiver of the civilian education requirement.

■ Despite the court's disinclination to accept Defendant's interpretation of the Army's authority under the statute to grant the waiver solely for purposes of promotion consideration, Plaintiff's demand that his date of rank be readjusted back to the date of his promotion eligibility is untenable. Plaintiff's position amounts to a "gotcha," arguing that, having cited this particular statute as its authority for granting the promotion consideration waiver, rather than other authority available to it, the Army is to be held legally bound to its mistake.

Plaintiff argues, "I met the guidelines for a waiver under 10 U.S.C. § 12205(d). I requested a waiver in accordance with 10 U.S.C. § 12205(d). I was granted a waiver under 10 U.S.C. § 12205(d). The Army is required to adhere to the plain language of 10 U.S.C. § 12205(d)." Pl.'s Reply 6. Yet, Plaintiff acknowledges as true Defendant's statement that,

> Nor does Mr. Hayes dispute the Government's argument that if the Army had decided to not grant him a waiver for promotion consideration only, which is the sole action that Mr. Hayes challenges in this lawsuit, the Army could have used the fact that he did not have a baccalaureate degree as a basis for passing him over for promotion.

*Id.* at 7.

Tellingly, Plaintiff also acknowledges that "the Army could have granted a waiver on its own, and without citing 10 U.S.C. 12205(d), for consideration purposes only." *Id.*

It is clear to the court that, despite the reference to this statute in the memorandum dated October 24, 2005, from HRC to the 2005 CPT APL Promotion Board, the Army most emphatically did not approve a waiver for Mr. Hayes's *promotion:* "This waiver is granted for promotion consideration only. The officer must complete the required civilian education to be promoted." AR 50. Similarly, on February 2, 2006, the HRC memorandum directed to Mr. Hayes advised,

> To be promoted, you must remain in an active status and meet the promotion eligibility criteria set forth in AR 135–155. You received an exception to the civilian education requirement for promotion consideration purposes. The civilian education requirement must be completed no later than 10 November 2007. You must provide a copy of the diploma to your

promotion authority. Your promotion cannot be finalized until the civilian education requirement has been met. Your failure to comply with these instructions may result in your removal from the selection list. Questions should be directed to your area command or personnel management office. AR 47.

Plaintiff argues that the Army did not have the authority to do what it did on the basis of the particular statute it cited, but has also acknowledged that the Army had other authority available to it to allow his promotion to be considered while he pursued his degree. As stated above, the record is quite clear to the court what the Army did not do. The court finds as a matter of fact that the Army did not grant Plaintiff a waiver of the education requirement for his promotion to the rank of Captain. If, therefore, the court were to find that the Army's action allowing for *consideration* of his promotion on the basis of 12205(d) was *ultra vires*, Plaintiff would be much the worse off, although that is the gamble suggested in Plaintiff's "all or nothing" approach.

Rather, the court finds that the ABCMR had it right in its reconsideration decision when it concluded, "Therefore, it appears well within the discretionary authority of the Secretary of the Army, as implemented by HRC, to allow a civilian education waiver for promotion consideration *separate and apart from* the civilian education requirement for promotion and defined exceptions and waiver authority provided in Title 10, U.S.Code, section 12205." AR 6 (emphasis added).

V. Conclusion

The court, therefore, does not find the decision of the ABCMR arbitrary or capricious. Defendant's motion for judgment on the administrative record is GRANTED and Plaintiff's cross-motion is DENIED.

The Clerk is directed to enter judgment for Defendant.