# United States Court of Federal Claims

Nos. 16-78 C & 16-77 C
(Consolidated)
June 30, 2016

| | | |
|---|---|---|
| **PHOENIX MANAGEMENT, INC.,** | ) ) ) ) | Pre-Award Bid Protest; Historical Cost Information; |
| *Plaintiff,* | ) ) | Past Performance Evaluation; Lowest-Priced Technically |
| **v.** | ) ) ) | Acceptable Offeror; Injunctive Relief; Motion To |
| **THE UNITED STATES,** | ) ) | Strike Declaration |
| *Defendant.* | ) ) ) | |

*John C. Dulske, Esq*, Dulske & Gluys, P.C., San Antonio, TX, for plaintiff.

*Joseph A. Pixley, Esq*., United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Futey,** *Sr. Judge***.**

These pre-award bid protests challenge two materially identical solicitations that seek proposals for military base operations and support services at the Youngstown, Ohio and Pittsburgh, Pennsylvania Air Reserve Stations.[1] The United States Department of the Air Force ("Air Force") extended these solicitations on September 30, 2015 and October 15, 2015, respectively. Both solicitations contain service-disabled veteran-owned small business set-aside provisions.

Phoenix Management, Inc. challenges three aspects of the solicitations: (1) the price evaluation procedure and historical cost information, (2) the past performance determination procedure, and (3) the decision to employ a lowest-priced technically

---

[1] Although the proceedings in these case were conducted under seal, the parties advised the court, pursuant to a June 27, 2016 status conference, that redactions were not necessary because the protests do not implicate any privileged or confidential proprietary commercial information. Accordingly, the court issues this opinion without the 14-day holding period for proposed redactions provided under Rule of the Court of Federal Claims 18(b).

acceptable offeror methodology. In its defense, the Government argues that the solicitations provided adequate information and price evaluation, that the Air Force's method of considering past performance is in accordance with the law, and that the Government was within its discretion to select the lowest-priced technically acceptable offeror solicitation format.

Before the court are plaintiff's complaint for injunctive and declaratory relief, the parties' cross-motions for judgment on the administrative record, under Rule 52.1(c) of the Rules of the Court of Federal Claims ("RCFC"), and defendant's motion to strike the declaration of Gary Giarratano. The court held oral argument on these matters on May 24, 2016.

## BACKGROUND

### A. The Solicitations

On September 30, 2015 and October 15, 2015, the Air Force issued requests for proposals, Nos. FA6656-15-R-0002 and FA6712-16-R-0001, seeking contracts for military base operations and support services[2] at the Youngstown, Ohio and Pittsburgh, Pennsylvania Air Reserve Stations. AR Tab 5, Tab 32. Both solicitations contain service-disabled veteran-owned small business set-aside provisions, pursuant to Federal Acquisition Regulation ("FAR") § 52.219-27, primarily for firm fixed price contracts with cost reimbursable tasks. AR Tab 1 at 1, Tab 21 at 789. The solicitations provide a base period of 12 months with four one-year options. AR Tab 12 at 737, Tab 45 at 2407. The Air Force estimates that the Youngstown contract will cost $29.4 million and the Pittsburgh contract will cost $28.1 million. AR Tab 7 at 700, Tab 45 at 2407.

The solicitations state that the Air Force will award the contracts to the lowest-priced technically acceptable ("LPTA") offeror, in accordance with FAR § 15.101-2. AR Tab 5 at 350, Tab 32 at 1861. The LPTA methodology is appropriate when the Government expects that the best value will result from the technically acceptable proposal with the lowest price. FAR § 15.101-2(a). Under this approach, "award will be made on the basis of the lowest evaluated price of proposals meeting or exceeding the acceptability standards for non-cost factors." FAR § 15.101-2(b)(1).

The solicitations require offerors to submit their proposals in four volumes: administrative/contract documentation, technical capabilities, past performance, and price. AR Tab 5 at 341-342, Tab 32 at 1851-1852. The latter three volumes comprise the primary evaluation factors: technical acceptability, price, and past performance. AR Tab 5 at 351, Tab 32 at 1862. The technical acceptability factor includes two "sub factors:" the quality control plan and resource/personnel management. AR Tab 5 at 352-53, Tab 32 at 1862-

---

[2] These services include supply, vehicle operation and maintenance, traffic management, and other airfield management tasks. AR Tab 7 at 700, Tab 45 at 2407.

63. The solicitations state that each primary and sub factor will be rated on an acceptable or unacceptable basis. An unacceptable rating for any factor "will render the entire proposal unacceptable." AR Tab 5 at 351, Tab 32 at 1862.

The Air Force plans to award the contracts based on an "integrated assessment" of these factors. AR Tab 5 at 350, Tab 32 at 1861. The solicitations describe the process as follows:

> The first step of the evaluation process will be to accomplish a price analysis and all offerors that will be ranked from lowest to highest evaluated price. The second step is [to] determine if their technical proposal and past performance are acceptable or unacceptable in accordance with the evaluation criteria. If during this phase the lowest price offeror is determined to be 1) technically acceptable, 2) price is determined to be reasonable and balanced, and 3) past performance is determined to be acceptable, award will be made to that offeror without further consideration of any of the other offerors. If the lowest priced offeror is not found to be acceptable, then the next lowest bidder will be evaluated by the same criteria. This process will continue until a lowest price offer is identified that is technically acceptable with an acceptable past performance.

AR Tab 5 at 350, Tab 32 at 1861. Put simply, the Air Force plans to accept the lowest-priced offer that satisfies its "integrated assessment" of three primary evaluation factors. The instant protests implicate the latter two factors: price and past performance and do not challenge the technical acceptability factor or its sub factors.

*Price*

The Air Force's price analysis will evaluate the offers for price reasonableness and balance. AR Tab 5 at 353-54, Tab 32 at 1864-65. Price reasonableness examines the adequacy of the price competition amongst bidders. If the Air Force is unsatisfied, the solicitations state that additional information may be required to support an offeror's price. *Id.* Pricing balance considers whether any individual contract line items are "significantly overstated." *Id.* The Air Force plans to analyze whether each offeror's prices demonstrate "a logical progression" between price and quantity. The solicitations state that unbalanced offers "may be rejected if the lack of balance poses an unacceptable risk to the Government." *Id.*

Following this assessment, the Air Force will calculate each offeror's costs and arrive at a total evaluated price for each proposal. The total evaluated price consists of the extended prices for all firm fixed price contract line items, Service Contract Act, Davis Bacon Act, "Over and Above" labor costs, and a material-handling fee for reimbursable parts and materials. AR Tab 5 at 354-55, Tab 32 at 1865-66.

*Past Performance*

The past performance evaluation "will be used as a means of determining the probability of the offeror to meet the performance requirements of the proposed contract." AR Tab 5 at 352-53, Tab 32 at 1863-64. To this end, the Air Force will conduct a "subjective assessment" of any relevant job performance within the past three years to ascertain whether offerors have "consistently demonstrated a commitment to customer satisfaction and timely delivery." *Id.*

The Air Force plans to grade offerors' past performance on an "acceptable" or "unacceptable" basis. AR Tab 5 at 352-53, Tab 32 at 1863-64. If the Air Force determines that it "has a reasonable expectation" that an offeror can successfully perform the contract, the evaluator will rate the offeror as acceptable. *Id.* If the Air Force does not have this expectation based on the offeror's record of past performance, the evaluator will assign the offeror an unacceptable rating. *Id.* Offerors with sparse or no past performance information will be assigned an "unknown" rating. *Id.* The solicitations state that offerors with an unknown past performance will be considered as "acceptable" for the purposes of the solicitations. *Id.*

The solicitations set out deadlines for the submission of proposals on November 9, 2015 and December 23, 2015, respectively. AR Tab 5 at 190, Tab 32 at 1702. In response to plaintiff's protests, however, the Air Force has amended the solicitations to postpone these deadlines until these cases can be resolved. AR Tab 22.

## B. Procedural History

On November 8, 2015, plaintiff filed a bid protest before the Government Accountability Office ("GAO"), contesting the Youngstown and Pittsburgh solicitations. AR Tab 15, Tab 54. In that forum, plaintiff challenged the solicitations on four grounds: the lack of historical cost data, the decision not include other direct costs in the contracts' line items, the decision to consider unknown past performance as acceptable, and the decision to employ the LPTA award methodology. AR Tab 15 at 766-75, Tab 54 at 2868-75.

In response to plaintiff's GAO protest, the Air Force decided to undertake a "partial corrective action" and disclose some historical workload data. AR Tab 17, Tab 18, Tab 56. The Air Force amended both solicitations to include data on the quantities for two indefinite-delivery indefinite-quantity contract line items between August 1, 2014 and July 31, 2015. AR Tab 17. The Air Force declined, however, to disclose historical workload information for the firm fixed price contract line items or take any corrective action to address plaintiff's other arguments before the GAO. Plaintiff withdrew its GAO protest on January 19, 2016, prior to the GAO reaching a decision on the outstanding issues. AR Tab 19, Tab 20, Tab 59, Tab 60.

Three days earlier, on January 13, 2016, plaintiff filed its bid protests in this court. ECF No. 1. These protests present substantially similar arguments to those raised at the GAO, with plaintiff's first two points there combined into a single "costs" argument here. That same day plaintiff moved for a preliminary injunction. ECF No. 6. On January 15, 2016, the court denied plaintiff's motion as moot once the Air Force agreed to maintain the status quo. On February 29, 2016, plaintiff moved for a judgment on the administrative record. ECF No. 28. The Government filed its cross-motion for judgment on the administrative record and motion to strike the declaration of Gary Giarratano on March 21, 2016. ECF Nos. 31 & 32.

## DISCUSSION

### A. Standards of Review

The Tucker Act grants the Court of Federal Claims jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Tucker Act also establishes this court's standard of review for these actions: the arbitrary and capricious standard codified in the Administrative Procedures Act. 28 U.S.C. § 1491(b)(4) (incorporating by reference 5 U.S.C. § 706). Under this standard, the court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

The arbitrary and capricious standard requires the court to "determine whether the [agency] has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Res. Defense Council,* 462 U.S. 87, 105 (1983). This "highly deferential" standard requires the court to sustain agency actions that "evince[e] rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1058 (Fed. Cir. 2000). If the court determines a reasonable basis exists for the agency's actions, "the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed. Cir. 1989).

The court may set aside procurement decisions if either "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Comenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). In the first case, the court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion . . . and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (quotation marks omitted). In the second case, the plaintiff must "show 'a clear and prejudicial' violation of

applicable statutes and regulations.'" *Galen Med. Assoc. Inc. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (quoting *Banknote Corp. of Am. v. United States*, 365 F.3d 1345 (Fed. Cir. 2004)).

If "the trial court determines the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract . . . it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (2005). To do so, a protestor "must establish not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract award but for that error." *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed. Cir. 1996).

## B. The Parties' Cross-Motions for Judgment on the Administrative Record

A judgment on the administrative record is appropriate "[w]hen proceedings before an agency are relevant to a decision in a case" before the court. RCFC 52.1(a). Such a judgment is "properly understood as . . . an expedited trial on the record." *Bannum*, 404 F.3d at 1346. Unlike a motion for summary judgment, however, "a genuine dispute of material fact does not preclude a judgment on the administrative record." *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 751 (2012) (citing *Bannum*, 404 F.3d at 1355-56). Instead, the court must make factual findings based on the record. *Id.*

### 1. *The Cost Evaluation and Historical Data*

Plaintiff contends that the Air Force's decision not to divulge historical information on the costs of providing the solicitations' services prevents the Air Force from fairly evaluating offerors' proposals. These costs, dubbed "other direct costs" or "ODCs," include real property costs, materials, tools, and other supplies required to provide the contracts' base operations and support services. Plaintiff argues that offerors need the Government's purchase data on these items under the incumbent contracts in order to bid on a fair and equal basis because offerors might project these costs differently.[3]

Defendant argues that the solicitations adequately describe the Air Force's requirements and that additional information is unnecessary. Furthermore, defendant contends that plaintiff's position, that the solicitations must contain historical purchase information, is unsupported by the law. Defendant states that plaintiff has not cited any relevant authority to support this contention. Additionally, defendant comments that purchase information from previous contracts might reveal the incumbent contractors' proprietary information.

---

[3] Plaintiff notes that previous base operations and support service contracts allocated ODC costs to the Government. Pl.'s Mot. at 12-13. This supports plaintiff's broader policy argument that uninformed offerors are misjudging these costs and underbidding to their detriment in other similar procurements. Tr. at 19-20.

The solicitations in these cases provide expansive and thoroughly-detailed descriptions of the Air Force's base operations and support services requirements in their Performance of Work Statements.[4] AR Tab 5a, Tab 32a. These work statements contain numerous specifications regarding personnel, quality control, security, operations, safety, and other topics. The solicitations also project future workload estimates to aid offerors. AR Tab 5a at 399-403, 419-421, 440-441, 493, Tab 32a at 1915-1919, 1935-1940, 1963, 2012. The solicitations do not, however, include projections or estimates of the costs for materials and supplies needed to complete these tasks, the so-called ODCs.

The question before the court is whether the Air Force's decision not to include historical purchase information that offerors could use to project these ODCs was arbitrary or capricious. In other words, whether the solicitations can "[s]upport meaningful comparison and discrimination between and among competing proposals" without this ODC information. FAR § 15.304(b)(2).

The court addressed a similar question in *Glenn Defense Marine (Asia) PTE Ltd. v. United States*, 97 Fed. Cl. 568 (2011). In that case, also a pre-award bid protest, the court considered whether a Navy solicitation for indefinite–delivery indefinite–quantity ("IDIQ") maritime support contracts provided sufficient information. Finding that it did, the court recognized the "general rule" that "offerors must be given sufficient detail in an RFP to allow them to compete intelligently and on a relatively equal basis.'" *Id.* at 578 (quoting *Interface Flooring Sys., Inc.*, B–225439, 1987 WL 101567, at *5 (Comp. Gen. Mar. 4, 1987)).

The *Glenn Defense* court noted that this general rule has a special application in the context of IDIQ contracts because the open terms of these contracts "present[] a particular challenge." *Id.* (citing *Linc Gov't Servs., LLC v. United States,* 96 Fed. Cl. 672, 713 (2010)). For these contracts, the court recognized that "it may not be possible for the contracting agency to predict its needs accurately" and concluded that, therefore, "the solicitation should be based upon the best available information." *Id.* If the agency's needs are unknown, agencies are permitted to "base the solicitation upon the best available information . . . and rely on the professional expertise and business judgment of the bidders to fill in the missing information for themselves." *Id.* at 580. Subsequent cases have also acknowledged the predicament that IDIQ contracts present and found that when the Government cannot reasonably estimate its needs it is only required to provide offers with the best available information. *E.g., Qwest Gov't Servs., Inc. v. United States*, 112 Fed. Cl. 24 (2013).

---

[4] As defendant pointed out at oral argument, the solicitations contain detailed specifications such as the acceptable range for the height of grass. Tr. at 38 (citing AR 479-480).

Plaintiff argues that the court should extend this line of cases[5] outside of the IDIQ context and require the Government to reveal the best available information for the firm fixed price portion of the solicitations. As plaintiff puts it, offerors "do not have sufficient information because there's better information." Tr. at 15.

This line of reasoning, however, does not consider the underlying rationale behind the standard for IDIQ contracts. Agencies employ IDIQ contracts when their needs are indeterminate and, typically, agencies will include estimates to enable offerors to price their bids. Only when estimates are impracticable do they provide the best available information as a substitute. For example, "[w]here estimates for various types of required services are not reasonably available, an agency may establish a reasonable hypothetical, consistent with the RFP requirements, to provide a common basis for comparing the relative costs of the proposals." *Glenn Defense*, 97 Fed. Cl. at 580.

Here, there is no similar logic for requiring the agency to release historical purchase information. The solicitations clearly state the Air Force's requirements and define the contracts' terms. The information plaintiff seeks does not clarify an ambiguity or uncertainty in the solicitations. Instead, plaintiff requests data on the incumbents' costs of *providing* these services. In other words, information on the costs that other firms have accrued in satisfying their contracts' requirements. Plaintiff candidly admits that its motivation is to assist other bidders that might be inexperienced[6] in pricing the work requested. Tr. at 16-17. Yet, "there is no legal requirement that a competition be based on specifications drafted in such detail as to eliminate completely any risk for the contractor or that the procuring agency remove all uncertainty from the mind of every prospective offeror.'" *FirstLine Transp. Sec., Inc. v. United States*, 107 Fed. Cl. 189, 208 (2012) (quoting *Richen Mgmt., LLC,* B–406850, 2012 CPD ¶ 215, at *3 (Comp. Gen. July 31, 2012).

The court will not extend the best available information rule to firm fixed price contracts. Putting aside the far-reaching implications of such a ruling, the court is not persuaded that such a dramatic expansion of the rule is justified. Accordingly, the court finds that the Air Force's decision not to include historical cost information was neither arbitrary nor capricious because the solicitations at issue provide sufficient detail to allow offerors to compete intelligently and on a relatively equal basis.

Plaintiff presents a secondary ODC-related argument: that the Air Force's price analysis conflicts with the FAR because it does not require offerors to separately state their ODCs. Plaintiff contends that the Air Force cannot evaluate price balance without knowing the offerors' projected ODCs for each of their quoted contract line item prices.

---

[5] In plaintiff's words, the court should take the "next step" to *Glenn Defense*. Tr. at 15.

[6] At oral argument, plaintiff presented the policy argument that other offerors might "not appreciate the risk" associated with these costs and underbid. Tr. at 19-20.

FAR § 15.404-1(g) describes the requirements for a price balance analysis. It states that "[u]nbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more contract line items is significantly over or understated *as indicated by the application of cost or price analysis* t*echniques.*" *Id.* (emphasis added). The regulation clearly indicates that price analysis is a post-submission issue. Therefore, it is not properly the subject of a pre-award bid protest. *Glenn Defense*, 97 Fed. Cl. at 581 (stating that "[t]he text of FAR 15.404–1(g) makes clear that the FAR addresses the agency's price analysis of offers, and not the language or structure of the solicitation."). For this reason, the court will not consider it here.

Furthermore, the court remains wary of exposing the incumbent contractors' confidential proprietary information. Although plaintiff asserts that ODC data is not privileged,[7] the Freedom of Information Act ("FOIA") does exempt certain confidential commercial and financial information. 5 U.S.C. § 552(b)(4). For this reason, the Government does not reveal information such as "cost breakdowns, profit, [and] indirect cost rates" during post-award debriefing. FAR § 15.506(e)(3); *Essex Electro Engineers, Inc. v. U.S. Sec'y of Army*, 686 F. Supp. 2d 91, 94-95 (D.D.C. 2010) (commenting that the FAR exemption tracks its FOIA counterpart). The court does not need to reach this question, however, since plaintiff's motion is denied on other grounds.

## 2. *The Past Performance Review*

Plaintiff argues that the instant solicitations violate the FAR by granting favorable treatment to offerors with limited or no past performance record. As discussed above, the solicitations plan to grade past performance on an acceptable or unacceptable basis and consider "unknown" offerors with scarce or no past performance as acceptable. In plaintiff's view, this approach constitutes impermissible favorable treatment because the solicitations are in effect treating unknown offerors "more favorably for not having any past performance." Pl.'s Mot. at 21. Plaintiff contends that this works "to the detriment of those offerors who have strived to earn and establish an acceptable past performance history." Pl.'s Mot. at 19.

Defendant responds that the Air Force's approach is "fully consistent" with the FAR. Def.'s Mot. at 18. Defendant points to GAO precedent to support this assertion. *Id.*

Under the FAR, LPTA procurements do not need to consider past performance. FAR § 15.101-2(b)(1). If they elect to do so, however, the solicitations must be conducted in accordance with FAR § 15.305. *Id.* Pursuant to FAR § 15.305, offerors with a limited or no past performance record "may not be evaluated favorably or unfavorably on past performance." FAR § 15.305(a)(2)(iv). Notably, LPTA solicitations are excepted from

---

[7] Plaintiff contends that the ODC information it seeks is "clearly FOIA-able" and does not believe that the data falls beneath a FOIA exemption. Tr. 13, 59.

the comparative assessment subsection, set out in FAR § 15.305(a)(2)(i), because tradeoffs between price and non-price factors are not permitted in LPTA procurements. FAR § 15.101-2(b)(2). Instead, the agency evaluates each proposal's non-price factors strictly for acceptability and ranks proposals solely based on price. FAR § 15.101-2(b)(3).

Here, the solicitations conform to the regulations set out in FAR § 15.101-2. The Air Force has elected to consider past performance on an acceptable/unacceptable basis and will not make any tradeoffs against other factors or rank proposals based on past performance.[8] The court must examine, however, whether they comply with FAR § 15.305's bar on favorable or unfavorable treatment for offerors with scarce or no past performance.

This question turns on whether the solicitations' plan to consider "unknown" offerors without past performance as acceptable constitutes favorable treatment. In order to make this determination, the court must examine the purpose and function of the past performance evaluation.

The solicitations state that the Air Force will evaluate past performance in order to gauge "the probability of the offeror to meet the performance requirements of the proposed contract." AR Tab 5 at 352-53, Tab 32 at 1863-64. Particularly, the Air Force plans consider each offeror's record of "customer satisfaction and timely delivery of goods and services." *Id.* If "the Government has no reasonable expectation that the offeror will be able to successfully perform the required effort" then the Air Force will grade the offeror as unacceptable. *Id.* In short, the Air Force seeks to ensure that the awarded bidder will fulfill the contract with acceptable customer satisfaction.

Yet, the Air Force can only consider non-price factors, such as past performance, on an acceptable/unacceptable basis because these are LPTA procurements. This leaves the Air Force with two options for offerors with unknown past performance: (i) consider the proposal as acceptable or (ii) grade them as unacceptable and refer the offerors to the Small Business Administration ("SBA") for a Certificate of Competency determination. FAR § 15.101-2(b)(1). The SBA reviews offerors for competency once an agency has "determin[ed] and document[ed] that an apparent successful small business offeror lacks certain elements of responsibility (including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, tenacity, and limitations on subcontracting . . . ." FAR § 19.602-1(a). In other words, SBA referral requires a finding that an offeror is "nonresponsible." FAR § 19.601(c). Either of the two aforementioned options, however, exposes the Air Force to protest. Considering unknown offerors as acceptable is arguably favorable but considering them unacceptable is clearly unfavorable.

---

[8] Plaintiff alleges that the Air Force's "integrated assessment" of these factors necessitates tradeoffs. The court will address the argument in the next subsection.

The GAO confronted this quandary in *Y &K Maint., Inc.*, B-405310.2, 2011 WL 5560750 (Comp. Gen. Oct. 17, 2011). There, the protestor contested an Army solicitation for medical services on substantially similar grounds to the cases at bar. The GAO "found no basis to object to the RFP's stated methodology for evaluating past performance." *Id.* at 5. The GAO reasoned that treating unknown offerors as acceptable was "effectively, no different than assigning a neutral rating to that offeror's past performance." *Id.*

The court finds this rationale persuasive. In LPTA procurements, the Government uses non-price factors to eliminate unsuitable offerors before ranking them based on price. The Air Force's plan here, to consider unknown offerors as acceptable, qualifies unknown offerors as eligible for selection but does not impart any other competitive benefit. The Air Force cannot differentiate or make tradeoffs based on past performance. Put another way, the procedure simply allows the offerors with unknown past performance to advance in the process.

This approach makes particular sense in light of the past performance evaluation's purpose. The Air Force seeks to ensure its own satisfaction and eliminate offerors with a negative past performance record. They cannot eliminate unknown offerors, however, as this would clearly constitute unfavorable treatment. Instead, the Air Force plans to include these offerors' bids in the pool of acceptable offerors, effectively assigning them a neutral grade. In this way, the Air Force can achieve its purpose of screening out offerors with established records of negative past performance and avoid treating unknown offerors favorably or unfavorably.[9]

The Air Force has provided a reasonable basis for its proposed past performance evaluation. Accordingly, "the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1371 (Fed. Cir. 2009) (citing *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed. Cir.1989)).

For the aforementioned reasons, the court finds that the solicitations' past performance evaluation procedures do not grant offerors with limited or scarce past performance history favorable treatment. The court does not accept plaintiff's argument that the Air Force's proposed past performance evaluation procedure violates FAR § 15.305(a)(2)(iv) and constitutes a flaw in the procurements.

---

[9] Notably, a ruling that the Air Force's procedure violates the FAR would prohibit agencies from considering past performance whatsoever in LPTA procurements because agencies could not then consider unknown offerors either acceptable or unacceptable. The parties recognized this conundrum at oral argument. Tr. at 47-48, 57-58. The court declines to issues such a ruling.

### 3. *The Lowest Priced Technically Acceptable Format*

Plaintiff also contests the solicitations' format, arguing that the LPTA approach does not represent the best value to the Government. Pl.'s Mot. at 24. According to plaintiff, the Air Force has "failed to document specifically why" it believes that an LPTA methodology will result in the best value. *Id.* at 25. Plaintiff concludes that if the Air Force proceeds with LPTA procurements coupled with the solicitations' past performance evaluation procedure, "there is simply no way . . . that [the Air Force's] ultimate selection would result in a 'best value.'" *Id.* at 26. Additionally, plaintiff contends that the Air Force's planned integrated assessment "necessarily involve[s] trade off evaluations" which "are expressly prohibited." *Id.*

Defendant contends that the Air Force's decision to select the LPTA format was within the broad discretion afforded to agency contracting officers. Defendant also challenges plaintiff's argument that the solicitations' integrated assessments require tradeoffs.

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni,* 238 F.3d at 1332 (internal quotation marks omitted). In negotiated procurements,[10] such as this one, "the regulations entrust the contracting officer with especially great discretion." *Am. Tel. & Tel. Co. v. United States*, 307 F.3d 1374, 1379 (Fed. Cir. 2002); *LaBarge Products, Inc. v. W.*, 46 F.3d 1547, 1555 (Fed. Cir. 1995) (citing *Burroughs Corp. v. United States,* 223 Ct. Cl. 53, 65 (1980)). This discretion "extend[s] even to application of procurement regulations." *PlanetSpace, Inc. v. United States,* 92 Fed. Cl. 520, 539 (2010) (citing *Am. Tel. & Tel. Co.*, 307 F.3d at 1379).

In the instant cases, the Air Force contracting officer determined that "[t]here is a reasonable expectation that best value will be obtained from the selection of a technically acceptable proposal" and decided to employ the LPTA methodology. AR Tab 12 at 739. Under the FAR, "[a]n agency can obtain best value in negotiated acquisitions by using any one or a combination of source selection approaches." FAR § 15.101. The contracting officer endeavors to select the approach that will provide the best overall value to the Government, understanding that the "relative importance of cost of price may vary." *Id.* For example, when "the requirement is clearly definable and the risk of unsuccessful contract performance is minimal, cost or price may play a dominant role in source selection." *Id.*

---

[10] Negotiated procurements award contracts using procedures other than sealed bidding. FAR § 15.000. In sealed bidding, the Government invites bids and then evaluates them without discussion. FAR § 14.101.

Here, the Air Force determined that its requirements "have been stable for many years" and "are not expected to vary significantly from the current level." AR Tab 12 at 737, Tab 45 at 2407. The contracting officer also found that the Air Force's requirements "are well defined and performance will be closely monitored." AR Tab 12 at 738, Tab 45 at 2408. The Air Force noted that the solicitations further mitigate the risk with a two-month orientation period. *Id.* During this period, the awardee will "shadow the current work-force on a non-interference basis to observe the operations . . . ." *Id.* The Air Force concluded that the "overall [performance] risk assessment is low." *Id.*

Plaintiff disagrees with the contracting officer's conclusion and asserts the LPTA approach will not always represent the best value. In support of this argument, plaintiff presents a hypothetical in which two offerors are technically acceptable with a nominal price differential but markedly different past performance. Pl.'s Mot. at 26-27. In plaintiff's view, an award to the offeror with a slightly better price over the offeror with significantly better past performance does not represent best value. Once an agency selects the LPTA methodology, however, "[a] proposal is *per se* the best value if it meets the selection criteria and proposes the lowest price." *Universal Marine Co., K.S.C. v. United States*, 120 Fed. Cl. 240, 245 n.4 (2015).

Nevertheless, this hypothetical has no bearing on the question before the court, which is whether the contracting officer articulated a rational basis for the decision to utilize the LPTA methodology. In making this determination, the court reviews the agency's stated rationale for its decision and considers "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion . . . ." *Impresa Construzioni*, 238 F.3d at 1332. This standard does not require that the contracting officer's approach will always result in the best value. The court examines the process behind the agency's decision, not the potential outcomes. Here, the contracting officer articulated a rational basis for the Air Force's decision, finding that the overall performance risk for the solicitations was low and that emphasizing the price factor through the LPTA format would secure the best value to the Government.

Moreover, the Air Force's integrated assessment of the solicitations' evaluation factors does not necessitate tradeoffs, as plaintiff suggests. As discussed above, Section M of the solicitations provides that the Air Force will award the contracts to the lowest-priced offerors with an acceptable technical proposal, acceptable past performance, and reasonable/balanced pricing. AR Tab 5 at 350, Tab 32 at 1861. Although the solicitations refer to this process as an "integrated assessment," their terms clearly indicate that the Air Force will evaluate the non-price factors on an acceptable/unacceptable basis and will not conduct tradeoffs based on these factors. *Id.*

For the aforementioned reasons, the court finds that the Air Force contracting officer's decision to employ the LPTA format was within the "especially great" discretion afforded to contracting officers making decisions in negotiated procurements. *Am. Tel. & Tel. Co.*, 307 F.3d at 1379. The Air Force has clearly provided a coherent and reasonable

explanation for its decision and, therefore, the court will not disturb its determination that an LPTA procurement represents the best value for the Government.

## C. Defendant's Motion To Strike the Declaration of Gary Giarratano

Defendant has moved to strike the bulk[11] of one of plaintiff's exhibits, the declaration of Gary Giarratano. Defendant contends that the declaration "is dedicated to introducing facts outside the record and arguing the merits of the Government's contracting decisions" and, therefore, should be stricken because its contents "are irrelevant to the Court's assessment of whether the solicitations at issue in this protest are reasonable and lawful." Def.'s Mot. at 1. Defendant argues that the court must restrict its review to the facts before the agency, as compiled in the administrative record.

Plaintiff contends that Mr. Giarratano's declaration falls under an exception to the general rule that the court should restrict its review to the administrative record. Plaintiff argues that the court should determine that "the existing record is insufficient for the Court to perform a meaningful review" and allow the declaration to supplement the record. Pl.'s Mot. at 2-3. In plaintiff's view, defendant "misstate[s]" the declaration's purpose, which is solely to supplement the record with information "necessary for the Court to conduct an effective judicial review." *Id.*

In considering a motion for judgment on the administrative record, the court makes factual findings "as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1357. Therefore, the court generally reviews the agency's decision "based on the record the agency presents to the reviewing court." *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)). That is, "the administrative record already in existence, not some new record made initially in the reviewing court." *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1379 (2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

Ultimately, the administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review . . . ." *Axiom*, 564 F.3d at 1381. Courts must "exercise restraint in examining information that was not available to the agency," however, because a "failure to do so risks converting arbitrary and capricious review into a subtle form of *de novo* review." *Arinc Eng'g Servs. LLC v. United States*, 77 Fed. Cl. 196, 200-01 (2007). Parties do not possess an "unfettered right to submit declarations giving [their] commentary on every aspect of the . . . process, and to have those declarations included in the administrative record." *L-3 Communications EOTech, Inc. v.United States*, 87 Fed. Cl. 656, 672 (2009); *RhinoCorps Co. v. United States,* 87 Fed. Cl. 261, 282 (2009)

---

[11] Defendant does not move to strike paragraph 15 of Mr. Giarratano's declaration, which will be admitted.

(striking proposed declarations because "[t]hese documents proffer facts that substitute plaintiff's opinion for the [government's] technical determinations").

The declaration of Mr. Giarratano, a vice president of Phoenix Management, Inc., provides a wide range of commentary on the solicitations at issue in these cases. He touts plaintiff's "exceptional" record of past performance, Dec. ¶ 6, presents his perspective on the historical ODC information, Dec. ¶¶ 8-9, estimates the total costs based on his experience with similar contracts, Dec. ¶ 10, and presents his views on whether the Government can meaningfully evaluate bids, Dec. ¶ 11. He also speculates that other firms will "fail to understand the significance of the ODCs." Dec. ¶ 12. In sum, Mr. Giarratano's declaration presents his personal opinions on many of the issues before the court.[12]

The court respectfully finds that it does not require this information to conduct a meaningful judicial review of the solicitations at issue here. The extensive administrative record before the court provides the requisite facts for the court's review of the Air Force's decisions in this case and Mr. Giarratano's declaration does not introduce any new information that might assist that review. For these reasons, the court will grant defendant's motion and strike the declaration with the exception of paragraph 15, which, as defendant notes, has bearing on plaintiff's request for injunctive relief.

**D. Plaintiff's Request for Injunctive Relief**

The Tucker Act empowers this court to award "any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). Thus, "once jurisdiction attaches, the Court of Federal Claims has broad equitable powers to fashion an appropriate remedy," such as a permanent injunction. *Turner Const. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011). In order to exercise this power, the court must determine "whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1036-37 (Fed. Cir. 2009). The first prong of this test requires the court to consider "whether, as it must, the plaintiff has succeeded on the merits of the case." *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004).

The court does not accept plaintiff's arguments regarding the solicitations' alleged defects and, therefore, plaintiff cannot demonstrate success on the merits. For this reason, it is not necessary for the court to determine whether plaintiff has satisfied the remaining

---

[12] Phoenix filed a motion to supplement the record with a similar declaration by Mr. Giarratano in another bid protest before this court, which was denied. *Phoenix Mgmt., Inc. v. United States*, 125 Fed. Cl. 170, 177-180 (2016).

test prongs. *Glenn Defense*, 97 Fed. Cl. at 582 (stating that "[b]ecause plaintiff has not succeeded on the merits of its case, it is unnecessary for the court to determine whether [it] has established the remaining three factors."). Accordingly, the court finds that plaintiff is not entitled to permanent injunctive relief to prevent the Air Force from proceeding with these procurements.

## CONCLUSION

For the above stated reasons, the following is hereby ordered:

1. With respect to plaintiff's request for injunctive relief, plaintiff's MOTION is DENIED.

2. With respect to plaintiff's motion for judgment on the administrative record, plaintiff's MOTION is DENIED.

3. With respect to defendant's cross-motion for judgment on the administrative record, defendant's MOTION is GRANTED

4. With respect to defendant's motion to strike the declaration of Gary Giarratano, defendant's MOTION is GRANTED, except for paragraph 15.

5. Plaintiff's complaints are hereby DISMISSED.

The Clerk is directed to take the necessary steps to enter judgment in these consolidated cases, in accordance with this Opinion.

**IT IS SO ORDERED.**

s/ *Bohdan A. Futey*

Bohdan A. Futey
Senior Judge